UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF WISCONSIN

---

PIT ROW, INC., et al.,

               Plaintiffs,

    v.

COSTCO WHOLESALE CORPORATION,

               Defendant.

Case No. 2020-CV-0738

---

## MEMORANDUM OF LAW IN SUPPORT OF COSTCO'S
## MOTION FOR SUMMARY JUDGMENT

---

### Introduction

Plaintiffs in this action – twelve businesses operating gas stations in Green Bay – have sued Costco, claiming violations of the "minimum markup" provisions of the Wisconsin Unfair Sales Act. Although the Act permits Costco to sell gas for less than the minimum markup to match a price offered by a "direct competitor" where Costco's customers could "practicably purchase" their gas, Plaintiffs claim Costco's price-matching was unlawful in two respects.

First, Plaintiffs contend Costco is not allowed to match the price being offered by a BP gas station in Kaukauna, Wisconsin, because that station is 22 miles down the highway from the Bellevue Costco. It is undisputed, however, that hundreds of Bellevue Costco customers who purchase gas from the Bellevue Costco warehouse live nearby the Kaukauna BP and thus can "practicably purchase" their gas from that station rather than gassing up at Costco.

Second, Plaintiffs claim Costco is not allowed to match the actual, 5-cent discounted price being offered to the customers of two Marathon stations in Green Bay under their rewards program, simply because Marathon's signage does not post the actual, lower price being offered to all of its customers. Plaintiffs claim this price matching violates the Act, even though the

statute defines the "existing price of a competitor" that can be matched as "*a price being simultaneously offered"* to customers, as opposed to "*the price posted* on street signage."

Plaintiffs assert these claims despite: (1) Costco's express statutory right to engage in the challenged price matching; (2) a court decision concluding Costco has a statutory right to match the prices of the Kaukauna BP as a "direct competitor"; (3) prior DATCP interpretative guidance affirming the propriety of the very price matching challenged here; and (4) the fact that penal statutes, such as the Unfair Sales Act, must be strictly construed in Costco's favor.

Plaintiffs not only ignore the plain meaning and import of the statutory safe harbors enumerated in section 100.30(6)(a), but also advance an interpretation of the private cause of action clause that turns the plain meaning of the statutory language on its head. Section 100.30(5m) confers a private cause of action upon a "person who is injured or threatened with injury" resulting from a violation of the Act. Nonetheless, Plaintiffs assert the Act confers a cause of action upon any and all "competitors" of the alleged violator – regardless of whether there is *any* evidence the competitor was "injured or threatened with injury" as a result of the claimed violation. Plaintiffs' interpretation in furtherance of *constricting* the scope of lawful pricing while simultaneously *expanding* the scope of exposure to penalties and fees gives new meaning to the phrase "strict construction."

Consistent with multiple decisions from the Wisconsin Supreme Court and the Wisconsin Court of Appeals, this Court held in its December 4, 2020 order: "If, in fact, Plaintiff[s] suffered no injury as a result of Costco's alleged violations, or if, instead, Plaintiffs' sales actually increased, Costco may be in a position to argue that Plaintiffs were not persons 'threatened with injury,' in which case they would be entitled to nothing at all." Docket 35 at 4. Thus, *each*

2

Plaintiff must adduce evidence proving they were "injured or threatened with injury" as a result of Costco's purported violations.

Because Plaintiffs cannot establish any *violation* of the Act by Costco, because they have no proof of any *injury* or threat of injury, and because they cannot prove their claimed injury was *caused* by Costco's challenged conduct, Plaintiffs' claims fail as a matter of law.

### Summary of Relevant Facts

A presentation and discussion of the defining characteristics of the competing business models of Costco and Plaintiffs provides important context for this Court's consideration and evaluation of Costco's motion.

### Costco's "Destination," Members-Only Business Model

Costco's members-only warehouse club is committed to offering its members the best possible prices on high-quality merchandise. Statement of Proposed Undisputed Material Facts ("SUF"), ¶ 2. Costco offers members a wide array of products and services at its warehouses, including pharmacies, optical centers, hearing-aid centers, travel agency services, food courts, groceries – and gas stations. *Id.* ¶ 4. Based on this "destination" shopping experience, members travel substantial distances to shop at Costco. *Id.* ¶ 5. Plaintiffs concede that their 17 gas stations do not offer a "destination" shopping experience capable of drawing customers from the significant distances Costco members will travel to purchase goods and services from Costco. *Id.* ¶ 12.

While Costco's members can purchase gas at Costco *or* from any competing gas stations – including stations in the neighborhoods where Bellevue Costco customers live, work, and commute – the Plaintiffs cannot lose a sale to Costco unless that customer is a Costco member. *See id.* ¶¶ 1, 2, 4, 11, 122, 125.

**Price Matching Based on a Kaukauna BP Station**
**Located in the Midst of Hundreds of Bellevue Costco Customers**

On March 13, 2017, Costco added the Kaukauna BP located at 601 E. Lawe Street to the list of "direct competitors" whose prices are surveyed each day. *Id.* ¶ 35. Costco began matching the Kaukauna BP's prices in response to concerns expressed by Kaukauna-area Bellevue Costco customers who questioned why their neighborhood gas station was able to offer lower gas prices than Costco. *Id.* ¶ 36. The Bellevue Costco has 538 customers who live within two miles of the Kaukauna BP station who purchased products or services from the Bellevue Costco during the relevant time frame, including 260 who purchased gasoline from the Bellevue Costco:



*Id.* ¶¶ 52-54.[1] In fact, Kaukauna has the single largest concentration of Bellevue Costco customers – *by far* – within the band of the 15 to 30 mile radius of the Bellevue Costco, where more than 20% of its customers live:



*Id.* ¶ 57, Konkel Decl. ¶ 32, Ex. DD at 5-7 (Costco gas-purchasing customers denoted in blue). Almost 30% of the Bellevue Costco's gas-purchasing customers live closer to the Kaukauna BP than to the Bellevue Costco warehouse. SUF, ¶ 60. While 43% of the Bellevue Costco's gas purchasing customers have less than a 15 minute drive to the warehouse, approximately 25%

---

[1] Although the Appleton Costco is closer to Kaukauna, that store did not open until November 7, 2015 – two years after the Bellevue location already had been operating. *Id.* ¶ 8. As Plaintiffs' expert, Donald Strenk, testified, consumers purchasing gasoline establish strong purchasing patterns and preferences that often continue indefinitely, which partially explains why so many Kaukauna residents continue to shop at the Bellevue Costco. *Id.* ¶ 121. Many of these customers, of course, may have jobs, friends or family members in Green Bay, leading them to choose to purchase goods and merchandise—including gas—from the Bellevue Costco, rather than patronizing the Appleton Costco. *Id.* ¶ 122.

have a 15 to 30 minute drive, approximately 17% have a 30 to 45 minute drive, and approximately 15% have more than a 45 minute drive. *Id.* ¶¶ 61-64.

The Department of Agriculture, Trade and Consumer Protection ("DATCP") is the state agency responsible for responding to complaints lodged by businesses challenging a competitor's pricing practices. *See id.* ¶ 71. Contrary to Plaintiffs' assertion that the mere geographic distance between two gas stations could preclude them from being "direct competitors," DATCP has confirmed the "direct competitor" status of gas stations much further distances apart from each other than the 22 miles along Highways 41 and 172 traveled by Kaukauna-area customers who purchase gas and other goods and services at the Bellevue Costco. *Id.* ¶¶ 72, 74-75. DATCP issued these pronouncements when the Plaintiffs' expert, Paul Dingee, was the DATCP Section Chief responsible for responding to such complaints. *Id.* ¶ 102-103. Similarly, DATCP specifically rejected the notion that two stations must be in the same "community" to qualify as *bona fide* "direct competitors" for price matching. *Id.* ¶ 73.

For example, DATCP concluded that the owner of an Antigo, Wisconsin gas station was permitted to match prices being offered by a station 26 miles away in Wittenberg as a "direct competitor." DATCP's conclusion was based on business records showing that many of the Antigo BP station's customers "live in the Wittenberg/Birnamwood area and travel to the Antigo area for work," as reflected in canceled checks. *Id.* ¶ 74. Similarly, DATCP agreed that an Algoma gas station was the "direct competitor" of a Green Bay station 32 miles away, based on a showing that many of the Algoma station's customers lived or worked in Green Bay. *Id.* ¶ 75.

DATCP's conclusion that "direct competitors" located in entirely separate communities and separated by substantial distances is consistent with longstanding interpretative guidance from DATCP. DATCP's longstanding interpretation of the Act is reflected in a November 12,

2010 email exchange between and among Paul Dingee (Section Chief at the time), Kevin LeRoy (Dingee's successor as Section Chief), Jeremy McPherson (Dingee's superior, then the head of the Trade Division), and other DATCP personnel, responding to a Wisconsin state legislator's request for interpretive guidance. *Id.* ¶ 80. Although DATCP's interpretation is entitled to no deference from this Court based on the Wisconsin Supreme Court's watershed decision in *Tetra Tech EC, Inc. v. Wisconsin Dep't of Revenue*, 2018 WI 75, ¶ 84, 382 Wis. 2d 496, 914 N.W.2d 54, this DATCP email nonetheless confirms the reasonableness of Costco's good faith reliance on the plain meaning of the statutory language governing price matching.

McPherson's email rejects Plaintiffs' contention that there is an outer limit on the distance between two *bona fide* "director competitors," opining instead: (1) there is no such "hard and fast formula" limiting the distance between direct competitors; (2) the distance between direct competitors necessarily "varies based on a number of factors"; (3) DATCP will not challenge direct competitor status "so long as there is a reasonable basis" for the retailer's position; and (4) "traffic and commuting patterns are certainly factors a retailer may consider" to identify and price match against its direct competitors. SUF, ¶¶ 81-83.

McPherson's email also rejects Plaintiffs' contention that the "market" for gasoline is confined to a particular community, and thus that the Kaukauna BP is not in the same "market" as the Bellevue Costco. *See id.* ¶ 84. DATCP advised that if "one community travels to another for employment, major shopping, and major grocery purchases," a station in one community may be a direct competitor of a station in the other community (regardless of distance). *Id.* Because

7

Case 1:20-cv-00738-WCG    Filed 03/01/22    Page 7 of 31    Document 67

2010 email exchange between and among Paul Dingee (Section Chief at the time), Kevin LeRoy (Dingee's successor as Section Chief), Jeremy McPherson (Dingee's superior, then the head of the Trade Division), and other DATCP personnel, responding to a Wisconsin state legislator's request for interpretive guidance. *Id.* ¶ 80. Although DATCP's interpretation is entitled to no deference from this Court based on the Wisconsin Supreme Court's watershed decision in *Tetra Tech EC, Inc. v. Wisconsin Dep't of Revenue*, 2018 WI 75, ¶ 84, 382 Wis. 2d 496, 914 N.W.2d 54, this DATCP email nonetheless confirms the reasonableness of Costco's good faith reliance on the plain meaning of the statutory language governing price matching.

McPherson's email rejects Plaintiffs' contention that there is an outer limit on the distance between two *bona fide* "director competitors," opining instead: (1) there is no such "hard and fast formula" limiting the distance between direct competitors; (2) the distance between direct competitors necessarily "varies based on a number of factors"; (3) DATCP will not challenge direct competitor status "so long as there is a reasonable basis" for the retailer's position; and (4) "traffic and commuting patterns are certainly factors a retailer may consider" to identify and price match against its direct competitors. SUF, ¶¶ 81-83.

McPherson's email also rejects Plaintiffs' contention that the "market" for gasoline is confined to a particular community, and thus that the Kaukauna BP is not in the same "market" as the Bellevue Costco. *See id.* ¶ 84. DATCP advised that if "one community travels to another for employment, major shopping, and major grocery purchases," a station in one community may be a direct competitor of a station in the other community (regardless of distance). *Id.* Because

the "statute says 'competitor,' not 'closest competitor,'" DATCP opined, neither the distance between two stations nor the number of gas stations situated between them is relevant. *Id.* ¶ 86.

Further, and rejecting yet another argument advanced by Plaintiffs, the DATCP email advises that two different "type[s] of competitors" can price match so long as they are both selling gas, since "meeting competition is based on the *sale of the same product*, not the *type of competitor*." *Id.* ¶ 85. Thus, despite their dramatically different business models, the Kaukauna BP and Costco nonetheless compete head-to-head for the sale of gasoline as direct competitors.

Contrary to Plaintiffs' argument that there must be a certain threshold number of customers in the other community to support direct competitor status and price-matching, moreover, DATCP opined that the "extent of lost volume isn't critical" so long as there is "an actual loss of business, or at least a good faith belief in a potential loss of business," to justify the retailer's decision to price match. *Id.* ¶ 88. Such is the case here. SUF, ¶ 36.[2]

### Marathon Station Price-Matching

The Bellevue Costco also periodically matches the gas prices offered by two Marathon stations located at 610 E. Walnut and at 952 W. Mason Street in Green Bay. SUF, ¶ 66. Pursuant

---

[2] Plaintiffs attached to their complaint a letter DATCP sent to Costco more than two years ago, questioning certain price matching by Costco. DATCP's comments in this February 25, 2020 letter to Costco, oddly enough, are directly contrary to the expression of DATCP's interpretations of the Act set forth in McPherson's November 12, 2010 email. *Compare* McPherson 11/12/2010 Guidance Email, SUF ¶ 80, Ex. X, *with* 2/25/2020 DATCP Letter, Third Am. Compl., Ex. B. As previously noted, DATCP's interpretations of the Act are entitled to no deference by this Court under any circumstances. *Tetra Tech EC, Inc.*, 2018 WI 75, ¶ 84. However, even before the Wisconsin Supreme Court declared an end to judicial deference to agency interpretations of statutes in the *Tetra Tech* decision, inconsistent pronouncements by an agency had *never* been afforded any deference or weight in Wisconsin, for obvious reasons. *Orion Flight Servs., Inc. v. Basler Flight Serv.,* 2006 WI 51, ¶¶ 60-61, 290 Wis. 2d 421, 714 N.W.2d 130 (pre-*Tetra Tech* case holding that inconsistent and contradictory interpretations by DATCP do not reflect a "settled" agency interpretation and must be given no weight); *22 Shawano, LLC v. Dr. R.C. Samanta Roy Inst. of Sci. and Tech., Inc*., 2006 WI App 14, ¶ 14, 289 Wis. 2d 196, 709 N.W.2d 98 (pre-*Tetra Tech* case holding that a prosecutorial pronouncement by an agency is given no deference). DATCP apparently did not have the benefit of the Brown County court's summary judgment decision against Plaintiff Pit Row entered earlier in these proceedings, as that summary judgment decision was issued just a few days before DATCP sent its letter. There is no acknowledgement of the court's decision in the February 25, 2020 letter, nor did DATCP produce a copy of the court's summary judgment decision in response to Costco's open records request. SUF, ¶ 93. Further, DATCP

*footnote continued on next page…*

to its *MakeItCount* rewards program, Marathon sells its gas for 5 cents less per gallon than the price displayed on its signs to customers who already are members of its program or who enroll as members upon pulling up to the pumps at Marathon (a process that takes just minutes using a smart phone). *Id.* ¶¶ 67-68. Accordingly, all of Marathon's customers are offered and can receive the benefit of the lower price by swiping their membership cards at the pump when they gas up. *Id.* ¶ 68. If the Marathon posted price is $2.50, then upon swiping their membership card, Marathon's customers buy the gas for $2.45. *Id.* ¶ 69. When the Bellevue Costco is matching Marathon's price, its members can purchase gas on the same terms and conditions as the Marathon members – in both instances, the customers pull up to the pump, they swipe their membership cards, and they gas up at the $2.45 per gallon price. *Id.* ¶ 70.

### Absence of Proof of Injury Resulting from Costco's Challenged Pricing

Plaintiffs allege Costco violated the Act on specified dates between October 1, 2019 and December 31, 2020 (the "Alleged Violation Dates"), claiming these purported violations have cost them lost sales and profits. SUF, ¶ 128. Costco's unrefuted analysis of the Plaintiffs' daily pricing and sales data, however, demonstrates Plaintiffs were never injured by Costco's pricing on the Alleged Violation Dates nor ever threatened with such injury. Further, the testimony from

---

invited Costco to respond to its February 25th letter, and Costco did so through multiple discussions, meetings, and correspondence with DATCP explaining why Costco's pricing is in perfect accord with the Act. *Id.* ¶ 95. Since sending its February 25, 2020 letter and receiving Costco's response and explanations, DATCP has not initiated any enforcement action against Costco. DATCP's failure to do so suggests that DATCP personnel may have reconsidered the positions staked out in the February 25, 2020 letter, and reverted to DATCP's historic, reasonable interpretation of the Act reflected in the McPherson email. *See id.* ¶¶ 80-91. While the February 25, 2020 letter has no legal weight in resolving the instant motion, DATCP's vacillation underscores the critical importance of the rule of strict construction, as the operative terms of the Act, if not *unambiguously* in favor of Costco, are *at the very least* ambiguous. In that event, any such potential ambiguity about the meaning of "direct competitor" must be resolved in Costco's favor, as penal statutes are strictly construed to *limit* the scope of statutory prohibitions, rather than to *expand* the universe of potential violations. *State v. Cruikshank*, 101 Wis. 2d 733 at *2 n.1, 306 N.W.2d 305 (Ct. App. 1981) (unpublished) (collecting cases).

the Plaintiffs and their experts confirms there is no admissible evidence to support Plaintiffs' conclusory and speculative assertions to the contrary. *Id.* ¶¶ 14-18.

### Dr. Sorensen's Regression Analysis

Dr. Alan Sorensen, the Chair of the Department of Economics at University of Wisconsin – Madison, has conducted an unrefuted analysis of the daily pricing and sales data produced by the Plaintiffs. SUF, ¶ 129. Dr. Sorensen's analysis not only demonstrates that there is no statistically significant correlation between Costco's challenged pricing and a decline in Plaintiffs' sales, but the data tends to show the opposite – an actual *increase* in Plaintiffs' sales (though not at a statistically significant level) following the challenged Costco pricing. *Id.* ¶¶ 131-132. These *increases* in Plaintiffs' sales on the heels of Costco price reductions are consistent with the fact that retail prices tend to follow the wholesale gas price trends. *Id.* ¶ 133.

Further, Costco members only comprise about 28% of the Green Bay population, and only 55% of those members purchased gasoline from the Bellevue Costco during the relevant time frame, *i.e.,* only about 15% of Green Bay's population. *Id.* ¶¶ 134-135. Since there are more than 370 competing gas stations in the Green Bay area where Costco members can purchase their gas, there is no factual basis for assuming that any particular Green Bay area station (including any of the Plaintiffs' stations) have any customers who purchased gas from the Bellevue Costco on any of the Alleged Violation Dates.[3] *Id.* ¶¶ 136-138.

Importantly, the Bellevue Costco does not advertise its gasoline prices or publish each day's prices on signage similar to what is used by the Plaintiffs and other competing gas stations

---

[3] These 370 gas stations are located within Brown, Outagamie, Oconto, Kewaunee, Door, Manitowoc, and Shawno Counties, which are the counties represented on the map that has been used by the Plaintiffs to define their proposed "Heat Map" class. *See* Docket 51 at 11, Pls.' Br. in Support of Certification. Public records maintained by DATCP confirm the number of gas stations in these counties. *See* SUF, ¶ 136, Konkel Decl., Ex. FF.

in Green Bay. Dingee testified that the "street sign or gas price sign" that is visible from significant distances by passing motorists "is the most important lure for consumers" purchasing gas. *Id.* ¶ 106. Dingee testified, however, that Costco does not advertise its daily gas prices on such elevated signage. Thus, Costco members do not even see the price being offered on any given day until they have already pulled up to the Bellevue Costco gas pumps. *Id.* ¶¶ 107-108.

### Plaintiffs' and Plaintiffs' Experts' Testimonial Admissions

When the corporate representatives of the Plaintiffs were deposed, it was confirmed that none of them knew: (1) whether any of their customers purchased gas from the Bellevue Costco on any of the Alleged Violation Dates; or (2) what motivated such customers (if any) to purchase gas from Costco on any such day. *Id.* ¶¶ 14-15. Similarly, none of the Plaintiffs performed an analysis of their sales to determine if there was any demonstrable correlation between Costco's prices on Alleged Violation Dates and a decline in their sales. *Id.* ¶ 18.

Although his report does not reference any interviews with the Plaintiffs' representatives or any analysis of their sales data, Plaintiffs' expert, Paul Dingee, testified that he had interviewed a few of the Plaintiffs *after* submitting his report. *Id.* ¶ 104. However, while some of those persons he interviewed claimed to have lost sales due to Costco's challenged pricing, Dingee neither requested nor received any data to back up their conclusory and speculative assertions, either before, during, or after those interviews. *Id.* ¶ 105.

As this Court is aware, the only data analysis referenced in either of the two Plaintiffs' experts' reports is the Kalibrate analysis referenced in the Strenk rebuttal report that has been ruled inadmissible. *See* Docket 59, 12/20/2021 Order. While Plaintiffs recently sought permission to amend their expert disclosures in the midst of certification briefing, Costco is

opposing Plaintiffs' eleventh-hour efforts to escape the consequences of their deliberate, strategic decisions in this action. *See* Docket 62, 2/11/2022 Motion to Supplement.

**Argument**

Plaintiffs' claims against Costco fail as a matter of law because the undisputed evidence demonstrates that Plaintiffs cannot establish any one of the three required elements for relief under the Wisconsin Unfair Sales Act. Accordingly, Plaintiffs' claims should be dismissed.

### I. Costco Did Not Violate the Unfair Sales Act on Any of the Alleged Violation Dates because its Pricing Conformed with the Express Terms of the Act.

Plaintiffs allege the Bellevue Costco priced its gasoline below the minimum markup price in violation of the Act on multiple specified dates between October 1, 2019, and December 31, 2020. *See* Docket 48, Third Am. Compl., Ex. A (specifying the Alleged Violation Dates). However, the undisputed facts demonstrate that on each of the Alleged Violation Dates, Costco either (1) sold its gas at or above the minimum markup price in conformity with section 100.30(2)(am)(1m)(c) of the Act; or (2) properly set its price by matching the "existing price of a competitor" in conformity with section 100.30(6)(a)(7) of the Act. SUF, ¶¶ 43-44. Because Costco did not sell its gasoline in violation of section 100.30(3), Plaintiffs have no claims as a matter of law. *See PDQ Food Stores, Inc. v. Speedway SuperAmerica, LLC,* No. 99-cv-2756, 2000 WL 33418835, at *2 (Wis. Cir. Ct. June 8, 2000) (the question whether challenged pricing methods violate the Act presents a purely legal question of statutory interpretation).

#### A. Wisconsin's Unfair Sales Act is a penal statute in derogation of the common law that must be strictly construed in favor of Costco and against the strained interpretations Plaintiffs advance in support of their claims.

Wisconsin's Unfair Sales Act not only empowers persons who are injured or threatened with an injury from alleged violations of the Act to pursue statutory penalties of $2,000 per violation against a defendant, Wis. Stat. § 100.30(5m), but the "**PENALTIES**" section of the

12

Act also permits Wisconsin District Attorneys and DATCP to file forfeiture actions for penalties as high as $2,500 per violation. *See* Wis. Stat. § 100.30(4). In addition to the forfeitures available under sections 100.30(4) and (5m), DATCP can pursue cease and desist orders to enjoin violations, and DATCP and Wisconsin District Attorneys can file enforcement actions to impose penalties as high as $5,000 per violation. *See* Wis. Stat. § 100.30(5)(a).

Illustrating the potential severity of the forfeitures contemplated by the Act, and conservatively assuming each challenged price was only offered for a single day, the purported violations asserted in this action would expose Costco to potential fines and penalties under sections 100.30(4), (5), and (5m) of nearly $2.5 million, plus fee-shifting exposure under section 100.30(5m). If the challenged prices were sustained for even three days, Costco's exposure to fines, penalties, and forfeitures triples to nearly $7.5 million, plus attorneys' fees.

Since section 100.30 exposes alleged violators to substantial fines and forfeitures, it is a penal statute that must be strictly construed against Plaintiffs by resolving any ambiguities in Costco's favor. *See Liberty Loan Corp. & Affiliates v. Eis,* 69 Wis. 2d 642, 649, 230 N.W.2d 617 (1975) (a "law providing for a forfeiture is a penal law" and any uncertainties as to the import of its language must be construed "strictly to soften its severity"); *State v. Cruikshank*, 101 Wis. 2d 733 at *2, 306 N.W.2d 305 (Ct. App. 1981) (unpublished) ("penal statutes are to be strictly construed in favor of one alleged to have violated their terms"); and *State v. Sampson,* 95 Wis. 2d 744, 293 N.W.2d 182 (Ct. App. 1980) (unpublished) ("a statute providing for a forfeiture must be strictly construed"). Similarly, since subsection (5m) creates a new cause of action in derogation of the common law, the rule of strict construction applies on those grounds as well. *N.E.M. v. Strigel*, 208 Wis. 2d 1, 6-7, 559 N.W.2d 256 (1997) (statutes in derogation of the

common law must be strictly construed); and *Poston v. United States Fidelity & Guar. Co.,* 107 Wis. 2d 215, 224, 320 N.W.2d 9 (Ct. App. 1982) (same).

For the reasons explained below, Costco's challenged pricing practices conform to the express and *unambiguous* terms of the Act. *See, infra,* §§ I.B-F. However, if any credence could be given to Plaintiffs' opposing interpretations of the Act (and such is not the case), those debated terms are at the very least ambiguous, and must be strictly construed in favor of Costco. *See PDQ Food Stores, Inc. v. Speedway SuperAmerica, LLC*, No. 99-CV-2756, 2000 WL 33418835, *5 (Wis. Cir. Ct., June 8, 2000) (the Act is a penal statute in derogation of the common law requiring strict construction of any ambiguities in the defendant's favor).

### B. Costco has an express statutory right to sell its gasoline below the minimum markup price "to meet an existing price of a competitor" and conduct in conformity with this statutory safe harbor is not a violation of the Act.

Section 100.30(5m) affords a private cause of action to "[a]ny person who is injured or threatened with injury as a result of a sale … in violation" of subsection (3) of the Act, and section 100.30(3) in turn prohibits sales below the minimum markup price "with the intent or effect" of "unfairly diverting trade from a competitor." *See* Wis. Stat. §§ 100.30(3) and (5m).

However, the Act does not apply to *all* sales below the minimum markup price, instead carving out nine exceptions, or safe harbors, where the "provisions of this section shall not apply." Wis. Stat. § 100.30(6)(a); *see also Heiden v. Ray's Inc*., 34 Wis. 2d 632, 642, 150 N.W.2d 467 (1967) (prohibitions of the Act do not apply if price matching requirements are met); and *Gross v. Woodman's Food Mkt., Inc.,* 2002 WI App 295, ¶ 7, 259 Wis. 2d 181, 655 N.W.2d 718 ("requirements of the Act do not apply to sales" specified in section 100.30(6)). The particular safe harbor placed at issue in this action is the exception for price matching, which provides that the Act does not prohibit sales where:

14

> the price of merchandise is made in good faith to meet an existing price of a competitor and is based on evidence in the possession of the retailer … in the form of an advertisement, proof of sale or receipted purchase, price survey or other business record maintained by the retailer … in the ordinary course of trade or the usual conduct of business.

Wis. Stat. § 100.30(6)(a)7. Section 100.30(2)(cj), in turn, defines an "existing price of a competitor" to mean "a price being simultaneously offered to a buyer for merchandise of like quality and quantity by a person who is a direct competitor of the retailer…from whom the buyer can practically purchase the merchandise." *See* Wis. Stat. § 100.30(2)(cj).

When lowering a price to "meet an existing price of a competitor," the retailer must submit notification of the lowered price to DATCP "before the close of business on the day on which the price was lowered in the form and the manner required by the department." Wis. Stat. § 100.30(7)(a). If the retailer fails to comply with subsection (7)(a), there is a "rebuttable presumption" that the retailer did not lower the price to meet the existing price of a competitor; conversely, if the business does comply with subsection (7)(a), then the retailer is immune from liability for the claims being asserted by Plaintiffs here. *See* Wis. Stat. §§ 100.30(7)(b) and (c).

Here, the undisputed facts demonstrate that Costco's challenged price-matching under subsection (6)(a)7 was based on daily price surveys and reflected in business records maintained by Costco encompassing all of the Alleged Violation Dates. SUF, ¶¶ 25-41. Costco personnel conducted daily pricing surveys, backed up those surveys with physical verification, and recorded the results of the surveys in business records that have been produced in this action. *Id.* Each price below the minimum markup is supported by a documented price that was being offered by one or more of Costco's direct competitors. *Id.* ¶¶ 44-49.

Further, the documentary record demonstrates that on each date Costco sold gas below the minimum markup, either (1) a statutorily required Notice of Meeting Competition was submitted to DATCP before the close of business on the day the price was lowered; or (2)

Costco's daily survey records reflect one or more direct competitor prices at or below Costco's price on those days. *Id*. *See Gross*, 2002 WI App 295, ¶ 54 (evidence of business records noting a direct competitor's supporting price overcomes any adverse presumption created by a missing notice); and *Krist Oil Co. v. Bulk Petroleum Corp*., 2007 WI App 203, ¶ 1, 305 Wis.2d 376, 738 N.W.2d 190 (proof of good faith also overcomes statutory presumption).[4]

Thus, the only question presented by this motion is whether Costco's matching of the prices offered by the Kaukauna BP and by the Green Bay Marathon stations were established "in good faith to meet an existing price of a competitor" under the Act. As will be shown, the undisputed facts demonstrate that such was the case on each of the Alleged Violation Dates.

**C. Costco properly price-matched against the Kaukauna BP station as a "direct competitor" where it is undisputed that the Bellevue Costco has hundreds of customers living nearby the Kaukauna BP station who could "practicably purchase" their gas from that station rather than from the Bellevue Costco.**

Plaintiffs' challenge to Costco's price matching against the Kaukauna BP rests upon their argument that the Kaukauna BP is not the Bellevue Costco's "direct competitor," asserting through their experts (1) that the 22-mile distance between the Kaukauna BP and the Bellevue Costco is too far for the two stations to be "direct competitors"; (2) that the hundreds of Bellevue Costco customers living nearby the Kaukauna BP do not purchase enough gas from the Bellevue Costco for the Kaukauna station to be a "direct competitor;" and (3) that Costco and the Kaukauna BP are not in the "same market" because consumers in Kaukauna would not travel 22

---

[4] Costco has submitted a Fed. R. Evid. 1006 data summary identifying the Notices of Meeting Competition and/or the supporting business records of the pricing surveys and physical competition checks that support Costco's challenged prices on each of the Alleged Violation Dates. The underlying business records summarized in this document have been produced to the Plaintiffs in this action. *See* SUF, ¶¶ 43-50, 66 (referring to Exhibit A to Konkel Decl.). Since Costco has business record support for each below minimum markup price challenged in this action, these undisputed facts entitle Costco to summary judgment on all of the Alleged Violation Dates, including those instances in which Notices of Meeting Competition could not be located in the company's records. Further, Costco's good faith is evidenced by these same daily surveys and its documentation of the price survey results and the supporting "direct competitor" price being matched, demonstrating that an inability to locate a notice of meeting competition for a particular date does not evidence an intent to violate the Act. *Id*.

miles just to purchase gasoline, and because the other goods and services sold in the Bellevue Costco warehouse constitute a different "market" than the sale of gasoline. *See* SUF, ¶ 124. Plaintiffs' arguments are *non sequiturs* refuted by a review of the plain language of the statute.[5]

The Unfair Sales Act permits Costco to match "a price being simultaneously offered to a buyer for merchandise of like quality and quantity by a person who is a direct competitor of the retailer … from whom the buyer can practicably purchase the merchandise," but the statute does not define "competitor" or "direct competitor." *See* Wis. Stat. § 100.30(2)(cj). However, the plain language of the statute, when interpreted and applied in context, establishes that Costco properly matched the prices of the Kaukauna BP as a "direct competitor."

In *Go America L.L.C. v. Kwik Trip, Inc*., after first noting that the statute did not define "direct competitor," the court consulted a dictionary defining "competitor" as "one selling or buying goods or services in the same market as another." 2006 WI App 94, ¶ 16, 292 Wis.2d 795, 715 N.W.2d 746. That same Merriam-Webster dictionary in turn defines "market" as an undefined "geographic area of demand for commodities or services (*e.g*., 'the southern market')."[6]

---

[5] Costco has identified and enumerated the specific, Alleged Violation Dates on which Costco's prices were based on the price being offered by the Kaukauna BP. *See* SUF, ¶ 50.

[6] While there are multiple approaches to defining "competitor" and "competition," the definitions all confirm that the essence of competition is one business vying against another for the sales and loyalty of a common pool of potential customers seeking to purchase the same product. *See, e.g.,* Merriam-Webster (2021), https://www.merriam-webster.com/dictionary/competition ("competition" is the "effort of two or more parties acting independently to secure the business of a third party by offering the most favorable terms"); Collins English Dictionary (2021), https://www.collinsdictionary.com/us/dictionary/english/competitor ("competitors are companies who are trying to sell similar goods or services to the same people"); *MacMillan Dictionary* (2022), https://www.macmillandictionary.com/us/dictionary/american/competitor (competitor is a "company that sells the same goods or services as another company"); and *Cambridge Dictionary,* https://dictionary.cambridge.org/us/dictionary/english/competitor ("competitor" is a "person, team, or company that is competing against others" and "compete" defined as trying "to be more successful than someone or something else*"*).

17

In *Go America*, the owner of a gas station in Marquette, Iowa sued under the Act to prevent a competing Kwik Trip station in Prairie du Chien from matching the Marquette station's prices. 2006 WI App 94, ¶¶ 4-7. Rejecting plaintiffs' argument that the stations were not direct competitors because they were located in two different states, the court held that the statute imposed no such limitation on the universe of "direct competitors," and accordingly, that there was no basis for judicially engrafting such a limitation into the Act. *Id.* ¶¶ 16-18, 21. Significantly, the court noted that "Kwik Trip's sales records show that numerous customers from Marquette and other more distant communities in Iowa regularly purchase gasoline at Kwik Trip's Prairie du Chien store." *Id.* ¶ 5. Since the legislature had not imposed any limits on which "direct competitors" could engage in price matching, the court refused to do so. *Id.* ¶ 18.[7]

Consistent with the *Go America* court's analysis, the statutory language providing that a direct competitor whose prices can be matched lawfully is a retailer "from whom the buyer can practicably purchase the merchandise" provides additional support for Costco's interpretation. *See* Wis. Stat. § 100.30(2)(cj). Here, the evidence is undisputed that the hundreds of Bellevue Costco customers living in Kaukauna who purchased gas from Costco on a given date *could* have just as easily and "practicably" purchased their gas from their neighborhood Kaukauna BP.

---

[7] After the *Go America* decision in January of 2006, DATCP personnel working under Dingee evaluated "direct competitor" status based on the same types of facts and circumstances that had supported a "direct competitor" status in *Go America*, *i.e.*, evidence demonstrating that customers of a gas station in one community could practicably purchase their gas in the other community based on demonstrable traffic and purchasing patterns, such as the Antigo-Wittenberg and Algoma-Green Bay scenarios examined and approved by DATCP in 2009 and 2010 (based on those businesses showing that each had customers who traveled from one community to the other despite the 26-mile and 32-mile distances). SUF, ¶¶ 74-75. DATCP's November 12, 2010 interpretive guidance to the state legislator likewise confirmed that stations in two different communities can be direct competitors despite the gulf of physical distance, so long as there is evidence that the station has customers who travel between the two communities and thus could "practicably purchase" gasoline from either station. *Id.* ¶¶ 80-84.

SUF, ¶ 125. Accordingly, the two retailers are "direct competitors" under the plain meaning (and evident purpose) of the statutory safe harbor for price matching.

Statutory language must be "interpreted in the context in which it is used; not in isolation but as part of a whole," and must be "given its common, ordinary, and accepted meaning …." *Kalal v. Circuit Court for Dane Cnty.*, 2004 WI 58, ¶¶ 45-46, 271 Wis. 2d 633, 681 N.W.2d 110. Here, the legislature's decision to permit a retailer to match the prices of a "direct competitor of the retailer … *from whom the buyer can practicably purchase the merchandise*" supports a pragmatic interpretation of "direct competitor" – one business that can easily take away customers and sales from the other business. Since the Bellevue Costco sold over 8,000 gallons of gas to its Kaukauna customers in September and November 2019 alone, moreover, the financial stakes of Costco's competition with the Kaukauna BP are substantial. SUF, ¶ 51.

This is precisely why the Brown County Court Commissioner dismissed Plaintiff Pit Row's claims against Costco early in these proceedings, prior to removal to federal court. *See* SUF, ¶ 96-98, Konkel Decl., Ex. R, 2/20/2020 MSJ Decision (Hon. Chad D. Resar). The court rejected Pit Row's assertion that the "23-mile geographical distance" between the two stations kept the Kaukauna BP from being a *bona fide* direct competitor of the Bellevue Costco under the Act. *Id*. Because "there are a significant number of members from the area surrounding the BP Gas Station that purchase their fuel from the Costco in Bellevue," the court ruled that Costco "is in direct competition" with the Kaukauna BP, and dismissed Pit Row's claims as a matter of law. Konkel Decl., Ex. R at 2. Significantly, the court reached this conclusion based on the *unambiguous* language of the statute, without having to invoke the rule of strict construction of ambiguities in a penal statute.

19

The basic, undisputed facts driving the court's summary judgment dismissal of Pit Row's claims have not changed. *See* SUF, ¶¶ 52-57 (confirming the Bellevue Costco has hundreds of customers who live nearby the Kaukauna BP); *id.* ¶ 36 (confirming that Kaukauna customer complaints prompted Costco to begin matching the Kaukauna BP's prices). Plaintiffs' own expert, Paul Dingee, admitted that the court commissioner's ruling demonstrates, "at the *very least,"* that "reasonable minds could differ" about the Kaukauna BP issue. *Id.* ¶ 126; *see also Cruikshank*, 101 Wis. 2d at *2 ("penal statutes are to be strictly construed in favor of one alleged to have violated their terms").

Further, since the phrase "direct competitor" must be "given its common, ordinary, and accepted meaning," it is significant the Plaintiffs and their experts have conceded that the type of head-to-head battle over gasoline sales being waged between the Kaukauna BP and the Bellevue Costco is the *very definition* of competition:

> **Q**:     [C]an you think of any more direct form of competition than one business persuading a customer to come to their shop rather than to your shop?
>
> **A**:     I think you're giving me the definition of competition, you know.  So I think I understand your question.  My competitors are trying to – would like to have my customers, in general.  I want my competitors' customers.

SUF, ¶ 127, Konkel Decl., Ex. AA at 34:13-23 (Strenk Dep.); *see also id.*, Ex. Y at 160:7-11 (Dingee Dep.) ("**Q**: Can you think of a more direct form of competition than one business taking away the business of another? Anything come to mind that's more direct than that? **A**: I can't think of anything right now.").

Each of the Plaintiffs also testified that the type of head-to-head competition for customer sales being waged between the Kaukauna BP and the Bellevue Costco is the *epitome* of "direct competition." Since statutory language is to be given its plain, ordinary meaning, the testimony from these business persons provides compelling support for Costco's interpretation of the plain

meaning of the words, "direct competitor." *See, e.g.,* SUF, ¶ 13, Konkel Decl., Ex B. at 103:18-22 (Matuszak testimony, "Q: Is there anything more direct in the world of business competition than one business losing a sale to a common customer to another business, anything at all you can think of? A: I guess not."); *id.* Ex. C at 123:24-124:9 (Pamperin testimony, "Q: [C]an you think of any more direct form of competition between two businesses who sell the same product than one business taking away sales or the customer from another business? Isn't that the essence of competition at its most direct and brutal level? A: Correct," also testifying that this was "capitalism at its finest"); *id.* Ex. D at 46:21-24 (Waldo testimony, Q: "Can you think of a more direct form of competition than one business taking away another business's customers for the same product? A: "No."); *id.* Ex. E at 54:14–19 (confirms same for D&N Acquisitions, Inc.); *id.* Ex. F at 76:13–24 (confirms same for Nicolet Gas, Inc., S&K Food Mart, Inc., and Bellevue Gas); *id.* Ex. G at 60:8–18 (confirms same for Everest Mart, Inc. and Badimaalika, LLC); *id.* Ex. H at 82:6–13 (confirms same for Tikapur Petroleum, LLC); *id.* Ex. I at 116:22–25 (confirms same for Bay Petro, LLC).

Plaintiffs also assert that the Kaukauna BP is not a "direct competitor" because the Bellevue Costco customers living in Kaukauna supposedly did not purchase "enough" gas from Costco for the Kaukauna BP to qualify as a direct competitor. However, there is no language in the statute to support the assertion that some unknowable and unspecified sales threshold must be met before a gas station can be considered a "direct competitor." *See* Wis. Stat. §§ 100.30(6)(a)7 and 100.30(2)(cj); *see also Gross,* 2002 WI App 295, ¶ 45 (direct competitor status does not depend upon proof of the retailer's particular market share). Just as the *Go America* court refused to insert language into the statute limiting "direct competitors" to stations competing within

Wisconsin's borders, so too should this Court reject Plaintiffs' bid to manufacture a sales volume threshold for direct competitor status. *See* 2006 WI App 94, ¶ 18.

Plaintiffs' proposal to add a "sales volume" threshold to the Act's terms erroneously assumes that competition – and sales volume – are static. While there are 699 Kaukauna area customers who made purchases from the Bellevue Costco during the relevant time frame, 463 of those customers from Kaukauna who shopped at the Bellevue Costco did *not* purchase gas. SUF, ¶¶ 58–59. Costco has a legitimate interest in competing with the Kaukauna BP for the sale of gas to those 463 customers – not *just* the customers who have already purchased gas from Costco. *See id.* ¶¶ 30, 58-59. Likewise, Costco has a strong interest in trying to convince those customers who already have purchased gas from the Bellevue Costco from time to time to purchase their gas from Costco more frequently. *Id.* ¶ 4. Not surprisingly, DATCP's interpretive guidance email rejects such a static notion of competition, advising that the "extent of lost volume isn't critical" so long as there is "an actual loss of business, or at least a good faith belief in a potential loss of business…." *Id.* ¶ 88.

Lastly, Plaintiffs argue that Costco is not in the same "market" as the Kaukauna BP because it is too far away, and because the Bellevue Costco attracts customers to its warehouse by offering multiple products and services that are not part of the "gasoline" market.

Once again, however, there is no language in the Act supporting such an argument. *See* Wis. Stat. §§ 100.30(6)(a)7 and 100.30(2)(cj). Further, the November 12, 2010 DATCP interpretive guidance email advises that stations more than 30 miles away from each other are "direct competitors" if the facts demonstrate they have customers who live or work in the other community. SUF, ¶¶ 80-91. Dingee, for his part, initially testified that he would not necessarily

or automatically challenge "direct competitor" status merely because the stations were 35 miles apart. *Id.* ¶ 109.[8]

Similarly, Strenk testified that each off-ramp gas station in Green Bay is a "direct competitor" of all of the other off-ramp gas stations located within 30 miles in each direction, and confirmed that in his view, each such Green Bay station is in the "same market" with those stations up and down the highway. SUF, ¶ 120. Proximity, Strenk's testimony confirms, is simply not required to be a direct competitor. *Id.* McPherson's November 12, 2010 email, moreover, expressly rejects the flawed proposition that "direct competitor" status is precluded by the mere distance between two competitors. *Id.* ¶¶ 81-82; *see also Val Vu, Inc. v. Lacey*, 497 P.2d 723, 725 (Colo. App. 1972) (competing retailers in Boulder and Denver permitted to price match under Colorado's Unfair Sales Act based on evidence that residents in Boulder will travel to Denver to purchase liquor if the price is right).

Second, the notion that Costco is not competing in the "same market" with the Kaukauna BP for gasoline sales just because Costco attracts customers based on the wide array of products and services offered to customers is again bereft of any support in the statute's language, and ignores the realities of the market. *All* of the Plaintiffs' stations offer an array of products and

---

[8] Less than a minute later, Dingee changed his testimony, stating that "the more I think about it," he *would* automatically reject "direct competitor" status if the two stations were 35 miles apart, trimming his arbitrary "outer limit" distance down to 30 miles (though still placing the Kaukauna BP well within these arbitrary parameters). SUF, ¶ 110. Dingee acknowledged that his opinions were "subjective," and that even DATCP personnel disagreed among themselves from time to time about whether two retailers were direct competitors. *Id.* ¶ 111. This presumably is why McPherson (Dingee's superior) advised the inquiring Wisconsin state legislator that "direct competitor" status would not be challenged so long as there was a reasonable factual basis for the station's position. SUF, ¶ 83. Although Dingee sought to limit the countenancing of a 30-mile distance to "rural" gas stations, this rural-urban distinction finds no support in the statute, contradicts Strenk's testimony recognizing a 30-mile direct competition range for urban, off ramp stations in Green Bay, and ignores the interpretive guidance issued by DATCP under his watch as Section Chief. Dingee's internal debate with himself underscores the absurdity of Plaintiffs' efforts to write an "outer limit distance" parameter into the Act that simply does not exist. Costco indisputably has hundreds of customers living in Kaukauna who travel to the Bellevue Costco for their gasoline and other products and services, and these customers' "practicable" ability to purchase their gas at the Kaukauna BP instead indisputably places the two retailers in "direct competition" with each other.

services *beyond* gasoline, to varying degrees, so they can attract more customers, as does Costco. The only difference is that Costco does it bigger and better. *See, e.g.,* SUF ¶ 12. All of these retailers – including the Bellevue Costco – are still competing for gas customers in the same market, regardless of the varying ways in which they try to attract those customers to their businesses. Once again, the November 12, 2010 DATCP email rejects any notion to the contrary, confirming that two different "type[s] of competitors" can price match so long as they are both selling gas, since "meeting competition is based on the *sale of the same product*, not the *type of competitor*." SUF, ¶ 85.

Because Plaintiffs' challenge to the Kaukauna BP's status as a direct competitor of the Bellevue Costco is based on manufactured "standards" wholly unsupported by the statutory language, Plaintiffs' claims challenging the Kaukauna BP price matching fail as a matter of law.

   **D.  Costco lawfully price-matched against the Green Bay Marathon stations as a matter of law where the undisputed evidence shows that the Bellevue Costco matched the "price being simultaneously offered" by the Marathon stations.**

As explained in the *Summary of Relevant Facts*, *supra*, two Green Bay Marathon gas stations participate in the *MakeItCount* Rewards program, which allows consumers who enroll as members to swipe their membership cards at the pumps and purchase gas for 5 cents per gallon less than the price displayed on the Marathon station signage. SUF, ¶ 67. The discounted price is offered to all Marathon customers, and enrollment is quick and easy. *Id.* ¶ 68. Plaintiffs nonetheless challenge Costco's matching of the prices these stations offer. *See* SUF, ¶ 113.[9]

---

[9] Costco has enumerated the specific instances in which the Bellevue Costco sold its gas on Alleged Violation Dates based on price matching against one or both of the Marathon gas stations in Green Bay. SUF, ¶ 66. Since these stations are within a few miles of the Bellevue Costco, the only question presented by this element of Plaintiffs' claims is whether the language of the Unfair Sales Act (or the regulations promulgated by DATCP) prohibit Costco's price matching against the discounted price being offered to customers of the Marathon stations.

Once again, Plaintiffs' claims are contradicted by the plain terms of the Act. Section 100.30(2)(cj) defines the "existing price of a competitor" that is eligible for price matching as "*a price being simultaneously offered to a buyer* … by a person who is a direct competitor of the retailer … and from whom the buyer can practicably purchase the merchandise." If the Marathon station signage advertises a $2.50 price on a given day, Marathon offers to sell its gas for $2.45 per gallon to all of its customers merely by enrolling as members. Costco occasionally matches the 5-cent discounted "price being simultaneously offered" by Marathon, as permitted by section 100.30(2)(cj). Notwithstanding the express language of the statute, Plaintiffs challenge Costco's right to match the Marathon stations' discounted prices, on two separate grounds.

First, Plaintiffs have challenged Costco's matching of the discounted price being offered by Marathon each day based on the fiction that Marathon customers are only being offered the *higher* price posted on station signage. Dingee criticizes Costco for not limiting its price matching to the Marathon "station's 'street price' (the price posted on its placard and advertised to the general public)," and instead matching (and charging) a price "5-cents lower than what the Marathon station was advertising." SUF, ¶ 113. Contrary to Dingee's criticisms, however, the Act permits Costco to match "*a price* being simultaneously offered to a buyer," not the "the *street* price," not the "the *posted* price," not "the *advertised*" price, and certainly not just "the *highest* price." Wis. Stat. § 100.30(2)(cj).

Dingee conceded that the words "street price" appearing within quotation marks in his report appear nowhere in the Act. SUF, ¶ 114. Statutes must be interpreted *as written*; new restrictions and requirements cannot be imposed upon Costco by engrafting new language into the statute to suit the Plaintiffs' purposes. *See Brauneis v. State, Lab. & Indus. Rev. Comm'n*, 2000 WI 69, ¶ 27, 236 Wis. 2d 27, 612 N.W.2d 635. If Marathon could prevent its competitors

from price matching merely by displaying *one* price on its signage, and then offering a *lower* price to all of its customers, this would defeat the Act's stated purpose of fostering fair competition, enabling competitors to weaponize the statute to perpetrate unfair competition.[10]

Second, Plaintiffs assert that ATCP 105.009(1) prohibits Costco from matching the 5-cent discounted "price being simultaneously offered" to Marathon's customers. SUF, ¶ 115. ATCP 105.009(1) provides that a price meets an "existing price of a competitor" under the section 100.30(6)(a)7 safe harbor "only if the merchandise in question … is offered under the same terms and conditions as the competitor's offer." Dingee's testimony confirms that Marathon's and Costco's customers are offered and receive the discounted price in precisely the same way: the person enrolls as a member; she swipes her membership card; and she pays the *same* price for the *same* type of gasoline on the "*same* terms and conditions." SUF, ¶ 116.

Because Costco's matching of the Marathon prices is permitted by the plain terms of the statute and the DATCP regulation Plaintiffs' claims premised on these purported violations fail as a matter of law.[11]

    **E.** **Costco is entitled to summary judgment because no reasonable jury could conclude that Costco's price-matching based on the Kaukauna BP and the Marathon *MakeItCount* Rewards program was conducted in "bad faith," as evidenced by the Brown County summary judgment decision affirming Costco's interpretation and as necessitated by the rule that penal statutes must be strictly construed against finding violations of the Act.**

---

[10] Dingee's suggestion that the 5-cent discounted price is not "advertised" by Marathon also is baffling, since his own file includes copies of such advertisements. The *MakeItCount* Rewards program is widely advertised by Marathon, as reflected in Dingee's own file, and as a quick Google search will demonstrate. SUF, ¶ 117. It matters not, however, since the Act permits price matching against "a price" offered to customers—not just "the highest price offered." Wis. Stat. § 100.30(2)(cj).

[11] Plaintiffs' claims premised upon Marathon price matching suffer from another fundamental flaw. Each day that the Bellevue Costco was price matching against Marathon, Plaintiffs' customers already were able to purchase their gas at either of the two Marathon gas stations offering that same discounted price. Since Plaintiffs' stations are located within a few miles of the Marathon stations, they already were competing with stations offering the very price they claim in this lawsuit caused them to be "injured or threatened with injury" as a result of *Costco's* pricing. This is one more of the numerous loss causation problems with Plaintiffs' claims. *See infra*, § II.

While Costco's challenged price matching did not violate the Act, Costco's demonstrable and indisputable "good faith" interpretation of the Act provides a separate and independent basis for dismissing Plaintiffs' claims as a matter of law. *See* §§ I.A-D, *supra*. Sections 100.30(6)(a)7 and (7)(c)2 provide Costco with immunity from liability if its efforts to meet the existing price of a competitor were pursued in good faith. Based on the arguments and analysis set forth in the preceding sections of this brief, no jury could reasonably conclude that Costco acted in bad faith. *Id*. Accordingly, Costco is entitled to summary judgment on these alternative grounds even if there *were* a viable argument that Costco had violated the Act (and there is not).

As Dingee conceded, the fact that a court carefully reviewing the facts and the law concluded that the Kaukauna BP was a direct competitor "*at the very least*" confirms that reasonable minds could differ over the Kaukauna BP's direct competitor status, thereby precluding a finding of bad faith. SUF, ¶ 126. Further, because there is no statutory or regulatory language preventing Costco from matching the 5-cent discounted price actually being offered to Marathon customers, Costco's reasonable reliance on the plain language of this penal statute and its regulations precludes a finding of bad faith as a matter of law. *See, e.g., Brethorst v. Allstate Prop. & Cas. Ins. Co.*, 2011 WI 41, ¶ 54, 334 Wis. 2d 23, 798 N.W.2d 467 (no bad faith if defendant has a reasonable basis in the law for its conduct); *First Nat'l Bank of Manitowoc v. Cincinnati Ins. Co.,* 485 F.3d 971, 982 (7th Cir. 2007) (no bad faith where there were "no Wisconsin cases directly on point and little persuasive extrajurisdictional case law"); and *Westfield Ins. Co. v. Sheehan Const. Co.,* 580 F. Supp. 2d 701, 717–18 (S.D. Ind. 2008), *aff'd*, 564 F.3d 817 (7th Cir. 2009) (no bad faith where defendant acted in conformity with a reasonable interpretation of existing law).

Although Costco's price matching against the Kaukauna BP and Marathon rests upon a reasonable (indeed correct) interpretation of the Act even *without* applying the rule of strict construction, no reasonable jury could find otherwise when any potential ambiguities are resolved in Costco's favor. Thus, Plaintiffs' claims should be dismissed for this reason as well.

### F. Costco is entitled to summary judgment dismissal of Plaintiffs' claims based on alleged violations on those dates that the Bellevue Costco sold its gas at a price equal to or above the statutory minimum markup price.

Costco's business records demonstrate that on 24 of the Alleged Violation Dates, Costco actually sold its gas at a price equal to or greater than the minimum markup price, as permitted by Wis. Stat. §§ 100.30(2)(am)1m.c and 100.30(3). SUF, ¶ 43. Because Costco did not need to match a price of a direct competitor on those 24 days, Plaintiffs' claims fail as a matter of law.

## II. Costco is entitled to summary judgment because there is no evidence any of the Plaintiffs were injured or threatened with injury as a result of Costco's challenged pricing practices on any of the Alleged Violation Dates.

Section 100.30(5m) confers a private cause of action upon a "person who is injured or threatened with injury" as a result of a violation of section 100.30(3). Construing the substantially identical statutory language in effect at the time, the Wisconsin Supreme Court held in *Heiden,* that a plaintiff must submit evidentiary proof of actual injury caused by an alleged violation of the Act to avoid summary judgment dismissal. 34 Wis. 2d at 638-39; *see also Gross,* 2002 WI App 295, ¶ 39 (plaintiff must submit "evidentiary facts" demonstrating injury by a violation of the Act); *PDQ Food Stores*, 2000 WL 33418835, at *4 n.3 (no private cause of action under the Act if business were unable to "demonstrate that it was injured").

Further, the *Heiden* court specifically rejected the argument that recovery could be premised upon a mere violation of the Act without proof that the plaintiff had been "damaged" or

"threatened with loss or injury." 34 Wis. 2d at 638.[12] *Accord Brooke Grp. Ltd. v. Brown &*
*Williamson,* 509 U.S. 209, 232 (1993) ("competent evidence is necessary to allow a reasonable
inference that [the defendant's challenged conduct] poses an authentic threat to competition" and
holding proffered evidence was insufficient as a matter of law). Finally, *Heiden* held that a *de*
*minimis* injury, such as the loss of a single sale, is insufficient to establish the requisite injury "or
threat of injury," nor will a plaintiff's subjective belief or "sheer speculation" of injury suffice.
34 Wis. 2d. at 638, 642. Each of these principles applies here.

    First, as recounted in the *Summary of Relevant Facts,* none of the Plaintiffs was able to
identify a single customer who had purchased gas from the Bellevue Costco on an Alleged
Violation Date, much less a customer who was motivated to do so based on a differential in
prices. SUF, ¶¶ 14-15.[13] Similarly, none of the Plaintiffs performed an analysis of their sales to
prove a correlation between Costco's pricing on Alleged Violation Dates and a decline in sales.
*Id.* ¶ 18. Plaintiffs' retained experts likewise failed to adduce any such admissible statistical
analyses. *Id.* ¶ 112. Plaintiffs' failure to adduce admissible evidence in support of the elements of

---

[12] Section 100.30(5m), the current statute, confers a private cause of action upon a "person who is injured or
threatened with injury as a result" of a violation of subsection (3), whereas the 1963 version of the Act afforded
claims to any "person damaged, or who is threatened with loss or injury, by reason of a violation" of the Act. *Id.* at
635-637 (quoting verbatim Sections 100.30(1) through (6) of the Act).

[13] Four of the Plaintiffs submitted interrogatory responses identifying a total of eight customers who held Costco
memberships during the relevant time period, but none of these Plaintiffs could testify that any of these customers
had purchased gas from Costco on an Alleged Violation Date. *See, e.g.,* SUF, ¶¶ 16-17. Even if any of these
customers had purchased gas on an Alleged Violation Date, and had been motivated to do so based on a price
differential, such potential, *de minimis* injury potentially relating to a total of 8 customers among the 17 gas stations
owned by the Plaintiffs is insufficient to support a claim as a matter of law. *Heiden*, 34 Wis. 2d at 638, 642. Further,
since Plaintiffs' expert conceded that Costco's entirely *lawful* conduct will cause stations in the marketplace to lose
sales, a Plaintiff's speculative assertion that he "knows" he lost sales to Costco not only falls short of the admissible
"evidentiary facts" required to avoid summary judgment, but also fails to demonstrate (even in a conclusory fashion)
that any potentially lost sales were caused by Costco's *challenged* pricing as opposed to being caused by Costco's
entirely *lawful* conduct as a competitive force in the market. *Id.*

injury and causation is fatal to their claims. *Heiden,* 34 Wis. 2d at 638-39; *Gross,* 2002 WI App 295, ¶ 39; and *PDQ Food Stores,* 2000 WL 33418835, at *4 n. 3.

Second, Dr. Sorensen's unrebutted regression analysis affirmatively demonstrates Plaintiffs were never injured or threatened with injury as a result of Costco's challenged pricing. *See* SUF, ¶ 130. To the contrary, the data tended to show an *increase* in Plaintiffs' sales – rather than a decrease – on the heels of Costco's pricing. *Id.* ¶ 132. Dr. Sorensen's results were predictable because only a fraction of the Green Bay population hold Costco memberships, and only a subset of those individuals purchased gas from the Bellevue Costco. *Id.* ¶ 134-135. When this small subset of customers is not buying gas at the Bellevue Costco, they can purchase their gas from over 370 competing gas stations. *Id.* ¶ 136. Accordingly, the chance of any one Plaintiff sustaining more than a *de minimis* loss of sales (if any) based on a customer's driving to the Bellevue Costco to take advantage of a price differential on an Alleged Violation Date is exceedingly small. *Id.* ¶ 138.

Because Plaintiffs have adduced no evidence showing that they have been injured or threatened with injury as a result of Costco's purported violations of the Act, Plaintiffs' claims fail as a matter of law.

## Conclusion

For each of the foregoing reasons, Plaintiffs' claims against Costco should be dismissed as a matter of law.

Dated this 1st day of March, 2022.

By: s/Paul F. Heaton
    Paul F. Heaton
    State Bar No. 1000858
    David R. Konkel
    State Bar No. 1097244
    Emma J. Jewell
    State Bar No. 1104663
    Godfrey & Kahn, S.C.
    833 East Michigan Street, Suite 1800
    Milwaukee, WI 53202-5615
    Phone:  414-273-3500
    Fax:  414-273-5198
    Email:  pheaton@gklaw.com
    dkonkel@gklaw.com
    ejewell@gklaw.com

    Attorneys for Defendant COSTCO
    WHOLESALE CORPORATION

26810402.3