UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF WISCONSIN

PIT ROW, INC., et al.,

Plaintiffs,

v.

COSTCO WHOLESALE CORPORATION,

Defendant.

Case No. 2020-CV-0738

**COSTCO'S BRIEF IN OPPOSITION TO PLAINTIFFS'
MOTIONS TO SUPPLEMENT THEIR EXPERT DISCLOSURES,
TO COMPEL DISCOVERY, AND TO AMEND THE SCHEDULING ORDER**

**Introduction**

After two years of expensive litigation and protracted discovery, the Plaintiffs and their

counsel (who seek to represent a class of "hundreds" of putative class members) have filed an

eleventh-hour motion seeking to dramatically expand the scope of their expert's testimony

beyond the opinions, theories, and grounds disclosed in the expert's two written reports.

Plaintiffs seek this relief even though they deliberately decided in January of 2021 that they

would _not_ commission the type of price elasticity data analysis they now seek permission to

interject into this case; even though they allowed the depositions of all twelve of the Plaintiffs'

corporate representatives to proceed on the basis of their expert's disclosed opinions; and even

though they had multiple opportunities to pursue this relief when it had become obvious that

their original strategy was unraveling.

Plaintiffs waited to file this motion, moreover, until three months after they filed their

motion for class certification, seeking to introduce new expert data analyses in the midst of

Costco's preparation of its opposition to Plaintiffs' certification motion.  Plaintiffs' arguments in

support of certification, as well as the contours and limitations of the Plaintiffs' expert

disclosures, substantially informed Costco's objectives, strategy, and approach to the numerous depositions that have been conducted over the past several months. Costco also relied on the content and limitations of Plaintiffs' disclosed expert opinions in its formulation and presentation of its arguments in support of its pending motion for summary judgment. Plaintiffs' proposal to introduce new expert opinions at this juncture would unfairly upend Costco's work and efforts.

Plaintiffs' only purported justification for their request is that Donald Strenk, a gasoline industry expert with no legal training, misunderstood the expert disclosure obligations under the federal rules. Since it is the obligation of Plaintiffs' counsel to ensure compliance with Rule 26(a) – not their experts – and because Plaintiffs' requested relief would cause enormous prejudice to Costco, their motion should be denied.

Plaintiffs also have moved for an order compelling responses to the eleventh-hour discovery requests for new data and documents that could have been pursued two years ago; that have no conceivable bearing on the parties' claims and defenses; and that impose burdens wholly disproportionate to the needs of the case and the claimed benefits of the requested discovery. Accordingly, that motion should be denied as well.

Finally, Plaintiffs seek what they call a "reboot" of the entire scheduling order in this action to accommodate their late-breaking efforts to expand the scope of their expert's opinions and analyses, and to afford Plaintiffs additional time to receive and rely upon responses to discovery that should never have been requested. That motion, too, should be denied.

Plaintiffs are direct business competitors who have forced Costco to spend hundreds of thousands of dollars defending claims that Costco's pending summary judgment motion will demonstrate to be wholly without merit. As will be shown below, moreover, Plaintiffs have filed this motion because they have realized over the course of the past three months' depositions that

they have not adduced evidence or supporting expert opinions and analysis essential to pursue the claims they have asserted. Plaintiffs' late-breaking realization of the deficiencies of their claims affords no basis for reopening expert disclosures or for extending this already expensive and protracted litigation to Costco's substantial prejudice. Because the Plaintiffs' motions do not satisfy the governing legal standards and are untimely in the extreme, they should be denied.

Argument

I.  **Plaintiffs Should Not Be Permitted to Introduce New Expert Opinions and Expert Data Analysis Under the Guise of "Supplementation" to Unwind the Consequences of Plaintiffs' Strategic Choices to Costco's Extreme Prejudice.**

Before turning to the specific standards governing Plaintiffs' motion for leave to "supplement" the expert reports submitted by Donald Strenk, it is important to note the purpose of Rule 26(a) expert disclosures:

> The 'incentive for total disclosure' is the threat that expert testimony not disclosed in accordance with the rule can be excluded pursuant to Rule 37(c)(1). The availability of this sanction 'put[s] teeth into the rule.' […] *It is the responsibility of the attorney to ensure that the expert's report contains complete opinions that are properly and thoroughly set forth and supported;* it should be the goal of the parties *to eliminate surprise, avoid unnecessary depositions and reduce costs.*

*Salgado by Salgado v. Gen. Motors Corp.,* 150 F.3d 735, 741 n.6 (7th Cir. 1998) (emphasis supplied).

Although Plaintiffs characterize their efforts to introduce what Strenk calls his "price elasticity" data analysis as mere "supplementation" of his rebuttal report, the courts have made clear that an expert's proposed introduction of new theories, methods, and analyses that were not put forward in the original reports and disclosures is not proper under Rule 26(e). In a decision rejecting such tactics, this Court held:

> By its own clear terms, the rule on supplementation is designed to allow (and indeed require) supplemental information to be submitted in order to correct a statement that proves incorrect or to supplement information that was incomplete. These are provisions designed chiefly for parties to ensure that the information they have disclosed in discovery

3

remains accurate. *They are not, in other words, a means of introducing completely new information or legal theories into the case.* As the leading treatise recognizes, the rule requiring supplementation of disclosures '*is not an invitation to hold back material items and disclose them at the last moment.*' 8 Charles Alan Wright & Arthur Miller, *Federal Practice and Procedure,* § 2049.1 (2d ed. 1994). [...] ...To the extent the new report actually supplements previously disclosed information, it may be allowed; but *if the new report seeks to introduce new theories* or damages issues into the case, it may not.

*Eberts v. Goderstad*, No. 05-C-527, 2009 WL 101633, at *1-2 (E.D. Wis. Jan. 14, 2009)

(emphasis supplied).

Plaintiffs' motion for leave to extend the expert disclosure deadlines so they can rely on Strenk's entirely new price elasticity data analysis is subject to Fed. R. Civ. P. 16, which permits appropriate "supplementation" when the standards of Rule 16 are met. Denying plaintiffs' motion for leave to purportedly "supplement" an expert report to introduce a "wholly new opinion," while permitting minor revisions that were "nothing more than a simple clarification," the district court in *ABS Glob., Inc. v. Inguran, LLC* held that a

> motion to supplement an expert report is governed by Federal Rule of Civil Procedure 16(b)(4), which requires 'good cause' to amend a scheduling order. In determining whether good cause exists, the court considers: '(1) whether the moving party acted diligently; (2) whether the amendments or supplements appear to be the legitimate [response] to newly-produced discovery disclosures; and (3) whether the opposing party is prejudiced by consideration of new or amended' expert opinions.

No. 14-CV-503-WMC, 2019 WL 3812520, at *1 (W.D. Wis. Aug. 14, 2019) (quoted source omitted).

First, because Plaintiffs made a conscious, strategic decision long before their initial expert disclosures were due in January of 2021 to forego reliance on the type of price elasticity data analysis they now seek to introduce into this case, their conduct is the opposite of the "diligence" required under Rule 16(b)(4). Second, Plaintiffs do not even contend that their bid to expand the scope of Strenk's opinions was prompted by "newly-produced discovery." Third, Plaintiffs' bid to introduce an entirely new price elasticity data analysis in support of their claims

4

(a) *after* Costco already has completed all the depositions of the corporate representatives of the twelve Plaintiffs, (b) *after* Costco has already deposed Plaintiffs' two experts, propounded (c) in the midst of certification and summary judgment briefing, and (d) on the eve of the close of discovery, would cause substantial prejudice to Costco.

Plaintiffs' bid to expand the scope of Strenk's expert opinions is plainly prompted by their realization during the course of the depositions of the Plaintiffs' corporate representatives and their two experts, that the scope and content of their experts' opinions and testimony fall far short of demonstrating Plaintiffs have been "injured or threatened by injury" as a result of Costco's challenged pricing. While Plaintiffs claim surprise that this Court did not permit them to rely upon the Kalibrate analysis without their disclosing the underlying facts, data, methodologies, and analytical software employed by Kalibrate to reach its conclusions, such disclosure is fundamental under Rule 26(a). Further, Kalibrate's analysis did not even evaluate Costco's actual challenged pricing or the actual impact – or absence of impact – of that challenged pricing on Plaintiffs' sales.

Plaintiffs' strategic choices concerning the expert testimony they developed – and that they chose *not* to develop – were all driven by their persistent, erroneous contention in this action that they do not even need to put forward evidentiary facts demonstrating that they have been "injured or threatened with injury" as a result of Costco's challenged pricing. *See* Pls.' Motion, Docket 62 at 2 n.1. This Court disabused Plaintiffs of this erroneous contention in its December 4, 2020, ruling, Docket 35 at 4, and longstanding Wisconsin Supreme Court precedent should have placed them on notice of the flaw in their analysis long before this Court's ruling. *See Heiden v. Ray's Inc*., 34 Wis.2d 632, 638, 642, 150 N.W.2d 467 (1967) (dismissing claims on summary judgment where "plaintiff felt that whenever there is a violation of the Unfair Sales

Act, he as an honest businessman suffers a loss or threat of injury," because such an assertion "is not an evidentiary fact").

Because Plaintiffs cannot establish even one of the three elements for establishing "good cause" under Rule 16(b), their motion should be denied.

**A. Plaintiffs deliberately chose at the outset of this action _not_ to develop the expert opinions and price elasticity data analysis now put forward by Donald Strenk, and the Plaintiffs' stated grounds and rationale for establishing "good cause" to amend the deadlines in this action do not withstand scrutiny.**

Plaintiffs argue they should be allowed to "supplement" Strenk's expert rebuttal report based on the assertions that (1) Strenk did not conduct any data analysis in the first place because he figured "in good faith" that Kalibrate's analysis would be a suitable proxy for his doing his own work, without disclosure of Kalibrate's underlying data and methodology; (2) Strenk is not really putting forward any "new" opinions, so their proposed changes to his reports are the type of "simple clarifications" permitted under Rule 26(e); and (3) Costco will not be prejudiced by new expert analyses unveiled in the midst of certification briefing, just prior to the close of discovery.

Each of these assertions is false, and none of these arguments purports to address the three elements for establishing "good cause" under Rule 16 to amend the scheduling order.

**1. Strenk's asserted "good faith" misunderstanding of the federal rules and the requisite disclosure necessary to introduce expert testimony ignores that the responsibility for ensuring compliance with Rule 26(a) and the admissibility of proposed expert testimony rests with counsel for the parties, rather than a non-lawyer gasoline industry expert.**

While Plaintiffs argue that Strenk's "good faith" misunderstanding of the federal rules provides good cause for permitting Plaintiffs to expand the scope of his expert testimony, it is erroneous to suggest that Strenk, a non-lawyer who was retained as an expert by Plaintiffs' counsel, was somehow responsible for understanding and evaluating the requirements of Rule

6

26(a)(2)(B). Experts are not rudderless ships left to navigate the legal waters of required expert disclosures on their own, without instruction and guidance from counsel; to the contrary, compliance with Rule 26(a) is the role of the attorneys. *Salgado by Salgado,* 150 F.3d at 742 n.6.

In this instance, the obstacles to Plaintiffs' proposed reliance on Kalibrate's analysis in support of Strenk's conclusory assertions in his expert rebuttal report should have been obvious. Kalibrate's analysis was struck from Strenk's rebuttal report because (1) Kalibrate had entered into a non-disclosure agreement with Strenk that insulated Kalibrate's proprietary database, methodology, and analytical software from scrutiny in discovery; and (2) Kalibrate had conducted the entire data analysis – not Strenk. *See* 11/30/21 Motion to Preclude, Docket 53; Docket 54-6 at STRENK000001-2 and 5-10; and 12/20/2021 Decision, Docket 59.

While Strenk may have believed "in good faith" he could rely on Kalibrate's analysis, Plaintiffs' counsel were responsible for advising Strenk otherwise. *See, e.g.*, *Welch v. Eli Lilly & Co.,* No. 1:06-CV-0641-RLY-JMS, 2009 WL 700199, at *6, 9 (S.D. Ind. Mar. 16, 2009) (precluding plaintiffs from putting forward new, late-breaking data analysis by a retained expert when "there were many analyses [the expert] could have conducted but did not, simply because he was not asked to do so by counsel," which the expert "admitted he could have performed [] from the start, but plaintiffs' counsel chose not to request them").

Further, Strenk's failure to conduct a price elasticity data analysis in support of his conclusory opinions was not the result of a "good faith" misunderstanding of the law, but instead, was the product of deliberate choices by the Plaintiffs and their lawyers. As early as August 18, 2020, Strenk had approached Kalibrate about conducting an analysis of the impact of Costco's prices on other stations in the market – five months before Plaintiffs' expert disclosures were due. *See* Docket 54-6 at STRENK000003-4. Strenk acknowledged it would take 2-3

7

months for Kalibrate to conduct the analysis. *Id.* On November 10, 2020, Strenk advised

Kalibrate that the Plaintiffs were finally "ready to move forward" with the project. *Id*. at

STRENK000011. However, Plaintiffs ultimately decided to proceed without conducting *any*

such data analysis – by Strenk *or* by Kalibrate – instead producing a January 30, 2021 expert

report by Strenk that was devoid of *any* supporting data analysis. *See* Strenk Report, Docket 69-

29.

Strenk admitted his report was "preliminary," and that counsel knew he "needs the data

to back up what the report says," but advised Kalibrate that Plaintiffs' counsel was not ready to

move forward with the analysis at that juncture. *See* Docket 54-6 at STRENK000024. Plaintiffs

elected to stand on Strenk's conclusory "industry" opinions without conducting any data analysis

to determine whether Plaintiffs had been injured or threatened with injury, even *after* Costco had

filed its August 22, 2020 motion to compel production of the sales and pricing data necessary to

perform such an analysis, and even *after* this Court's December 4, 2020 ruling that such data was

necessary to evaluate Plaintiffs' conclusory assertions that they had been "injured or threatened

with injury." *See* Dockets 18 and 35.

Strenk reiterated the necessity of such a data analysis in his February 19, 2021 email to

Kalibrate, advising that he "firmly believe[d]" a supporting data analysis was essential, reporting

that Plaintiffs' counsel also understood the necessity of such an analysis. *See* Docket 54-6 at

STRENK000035-36. On February 19 and 25, 2021, Strenk complained to Kalibrate that

"dealing with lawyers is a nightmare," lamenting their failure to move forward with a data

analysis even after he had "emphasized the urgency" of doing so. *Id*. at STRENK000035 and

42-44.

Nonetheless, Plaintiffs waited until after Costco had disclosed Dr. Sorensen's August 23, 2021 expert report and cross-price elasticity regression analysis before finally commissioning the Kalibrate analysis, which they unveiled in Strenk's October 11, 2021 rebuttal report without any of the requisite disclosures necessary to rely on that analysis. *See* Docket 54-4. As Strenk testified, Plaintiffs *still* had refrained from commissioning an analysis of the impact (if any) of Costco's actual, challenged pricing on Plaintiffs' sales, as Kalibrate did not even purport to examine that question. *See* Declaration of David Konkel ("Konkel Decl."), ¶ 3, Ex. A at 49-54.

Instead, Kalibrate was asked to examine the potential consequences of *hypothetical* 5 cent and 10 cent price decreases by Costco over a *hypothetical* 30-day period – pricing that bears no resemblance to the *actual* Costco pricing challenged in this lawsuit. *Id*. Strenk admitted he had not asked Kalibrate to conduct an analysis of the actual pricing on the claimed violation dates based on a study of Plaintiffs' actual sales because Plaintiffs' counsel had never asked him to do so. *Id*. at 52. Contrary to the central premise of Plaintiffs' motion, no price elasticity data analysis was performed because Plaintiffs' counsel deliberately chose not to do so.

On October 19, 2021, Costco's counsel objected to Strenk's report on two grounds: (1) Strenk had simply parroted the analyses and conclusions that had been formulated by another, undisclosed expert (Kalibrate), and (2) Plaintiffs had failed to disclose the underlying data and methodology that Kalibrate had used to conduct its analysis, as required by Rule 26(a)(2)(B)(i-ii). *See* Docket 54-5 at KONKEL000017-18.

On November 9, 2021, Plaintiffs' counsel advised Costco that no disclosures of Kalibrate's underlying data and methodology would be forthcoming because Kalibrate did not "want to get involved" in the lawsuit. *See* Docket 54-5 at KONKEL000010-11. After further efforts failed to resolve the impasse, Costco was forced to file a motion on November 30, 2021,

seeking to preclude any reference to the Kalibrate analysis from the case. *See* Docket 53. Significant to the instant motion, Costco filed its motion on an expedited basis "so counsel [could] timely complete the discovery related to class certification." *Id*. at 1. On December 20, 2021, this Court struck the Kalibrate analysis from Strenk's report. *See* Docket 59.

Contrary to the required showing that Plaintiffs acted diligently in developing and disclosing the new price elasticity data analysis that is the subject of this motion, according to Strenk, he could have completed this analysis in the space of one to two weeks, wholly unassisted by Kalibrate or anyone else. Konkel Decl., ¶ 3, Ex. A at 47. Despite the claimed ease of preparing such an analysis, Plaintiffs' counsel did not commission Strenk to do so even after (1) Dr. Sorensen had presented his own, August 23, 2021 cross-price elasticity regression analysis dispelling any notion that Costco's prices had caused the Plaintiffs to lose sales; after (2) Kalibrate's November 9, 2021 refusal to disclose its underlying data and methodology, contrary to Plaintiffs' fundamental disclosure obligations under Rule 26; after (3) Costco had filed a motion to preclude the Kalibrate analysis on November 30, 2021; and even after (4) this Court issued its December 20, 2021 order removing the Kalibrate analysis from the case. Plaintiffs' inaction is the opposite of diligence. *See Welch,* 2009 WL 700199, at *6 (denying leave to amend where plaintiffs were "well aware of the expert deadline… yet delayed two months in even retaining an expert for the purpose of supporting their claim," concluding plaintiffs' tactics were "even more confounding given that this matter was filed as a putative class action").

If Plaintiffs believed conducting a price elasticity data analysis was important to their claims, they should have immediately sought permission to amend and expand their expert disclosures after Kalibrate's data disclosure (predictable in light of the NDA signed by Strenk and Kalibrate), and at the very least, after Costco alerted Plaintiffs to its plans to contest the

admissibility of the analysis. While Plaintiffs assert that Strenk's misunderstanding of the rules demonstrates "good cause" to amend the expert disclosure deadlines, this argument wholly ignores that Plaintiffs' counsel themselves never even *asked* Strenk to perform such an analysis, much less sought approval from this Court for such an exercise.

Costco, for its part, only learned about Strenk's price elasticity data analysis by happenstance, midway through Strenk's January 20, 2022 deposition. *See* Konkel Decl., ¶ 3, Ex. A at 50-52, 57-59. Strenk had told Plaintiffs' counsel the day *before* his deposition that he had conducted this new analysis and had given Plaintiffs' counsel the results. None of this new information was shared with Costco in advance of the deposition. *See* Strenk Decl., ¶ 11, Docket 63; McKinley Decl., ¶ 6, Docket 64. Instead, Costco only learned that such a data analysis existed after posing a (seemingly) perfunctory question, asking Strenk to confirm that he had not conducted any data analysis in support of his expert opinions. Strenk surprised Costco's counsel by testifying that indeed he *had* done so, preparing such an analysis "over the past week." Konkel Decl., ¶ 3, Ex. A at 46-47. It was only after this exchange that Plaintiffs' counsel offered to share a copy of the results of Strenk's analysis that they had received the prior afternoon. *Id*. at 76. Once again, Plaintiffs' conduct is the opposite of diligent disclosure.

This Court would not even be confronted with this motion if Strenk, on his own volition and without direction from counsel, had not decided to embark on the analysis. Plaintiffs' strategic decision not to commission any such analysis from Strenk – on a timely basis in compliance with the established deadlines in this action – does not constitute "good cause" for the relief they now seek. *See, e.g.*, *Allgood v. Gen. Motors Corp.,* No. 1:02-cv-1077-DFH-TAB, 2007 WL 647496, at *6 (S.D. Ind. Feb. 2, 2007) (refusing to permit plaintiffs to amend their

expert disclosures to put forward new data analyses because they had "made strategic choices about how they would litigate this case").

In *Welch, supra,* the district court rejected plaintiffs' bid to "supplement" their expert's prior opinions and reports with a newly unveiled regression analysis, in "an attempt to bolster [the original opinions] with new analyses not previously performed on the exact same data." 2009 WL 700199, at *6. Just as occurred here, the *Welch* plaintiffs deliberately chose not to take steps to shore up their expert's original opinions, despite opportunities to do so at multiple junctures – including after the district court's "suggestion" that they do so much earlier in the case. *Id.* at *7. Because plaintiffs and their counsel had deliberately pursued a "desired strategic advantage," the court found "no justifiable reason whatsoever" to permit the expansion of the expert's opinions, granting defendant's motion to strike. *Id.*

Unlike in *Welch*, here, Plaintiffs and their counsel were given far more than a mere "suggestion" that they needed to shore up Strenk's expert opinions – they were confronted with this Court's ruling that the Kalibrate analysis was inadmissible. Plaintiffs chose to stand firm on Strenk's report and opinions, and they should be held to that strategic decision.

> **2. Strenk's recently developed price elasticity data analysis is substantially different from the analysis that had been conducted by Kalibrate and is the first purported effort by the Plaintiffs to examine the actual sales and pricing data exchanged by the parties in this action**.

Seeking to shoehorn their expansion of Strenk's proposed expert testimony into the "simple clarifications" permitted by Rule 26(e), Plaintiffs have argued that Strenk's new price elasticity data analysis does not constitute a "new opinion." Plaintiffs' contention is belied by a review of Strenk's initial and rebuttal expert reports, the proffered analysis and opinions submitted with his February 11, 2022 declaration, and Strenk's own testimony.

Strenk confirmed in his deposition that the data analysis conducted by Kalibrate was quite different than the price elasticity data analysis he purportedly conducted, and that neither his original nor rebuttal report contained any such price elasticity data analysis. *See* Konkel Decl., ¶ 3, Ex. A at 49-54, 275:18 – 276:6. While Kalibrate was never even asked to conduct an analysis of Costco's actual, challenged pricing or the plaintiffs' actual, ensuing sales experience, Strenk's recently unveiled data analysis purports to analyze the relationship between Costco's actual prices and the Plaintiffs' actual sales. *Id.*; Strenk Decl., ¶ 7, Docket 63.[1]

Strenk admitted that Kalibrate's hypothetical 5 cent and 10 cent price reduction analysis and his own, more recent price elasticity data analysis rest upon entirely different data, entirely different methodologies, and entirely different analytical objectives. Strenk testified that he never asked Kalibrate to perform the latter analysis, nor did Plaintiffs' counsel ask Strenk to do so. Konkel Decl., ¶ 3, Ex. A at 52. Strenk went even further in his testimony, however, claiming he had wanted to perform such an analysis earlier, but did not believe that Plaintiffs' counsel had obtained the necessary data from Costco. *See id.* at 272-279. These are precisely the circumstances causing the district court in *Allgood,* to reject plaintiffs' motion for leave to amend. Because the new report in *Allgood* "use[d] new methods and new data to address damages issues that plaintiffs had not addressed previously with expert testimony," even though

---

[1] Costco does not intend to imply that Strenk's purported price elasticity data analysis reflects a *bona fide* determination of the relationship between Costco's challenged pricing and Plaintiffs' sales experiences. Among other things, Strenk's declaration submitted to this Court does not disclose any aspect of the methodology used or explain even part of his basis and reasons for his new opinions. For example, the duration of the "higher" and "lower" pricing periods he studied to develop the "average" Plaintiff pricing used for his analysis; the data demonstrating precisely what is meant by a "higher" and "lower" price differential; or his method of "aggregating" the Plaintiffs' sales and pricing data or the method of comparing that data to Costco's pricing. *See* Strenk Decl., Docket 63-1. Based on the cryptic clues provided by Strenk's declaration, however, it is obvious Strenk's analysis does not study the consequences of any particular Costco price reduction challenged in this action for any one of the twelve Plaintiffs' gas stations. *Id.* While complete disclosure of the underlying facts and methodologies would be necessary to begin to evaluate Strenk's purported price elasticity data analysis, it is clear that there would be formidable *Daubert* obstacles to its admission under any circumstances.

"[t]hose damages issues [had] been in this case from the beginning," leave to amend was denied. 2007 WL 647496, at *1.

If Plaintiffs and their counsel had decided to change their strategy in response to this Court's December 20, 2021 order excluding the Kalibrate analysis, they certainly would not have waited until their expert – on his own volition – decided to cobble together his own, last-minute data analysis. Just as in *Allgood*, the Plaintiffs here "deliberately chose not to develop expert evidence on these topics at the early stages," instead choosing to "swing for the fences" on their theory that they could recover millions of dollars in statutory penalties without having suffered a lick of harm. *Id*. at *6; *see also* Pls.' Br. at 2 n.1, Docket 62 (insisting Plaintiffs are not required to adduce evidence of injury notwithstanding the plain language of section 100.30(5m), the *Heiden* decision and its progeny, and this Court's December 4, 2020 ruling).

Further aggravating the circumstances, Plaintiffs' counsel posed a series of leading questions at the end of the Strenk deposition to explain and justify why *Strenk* had not conducted such a data analysis earlier in the case. Strenk's proffered explanation elicited in response to these leading questions defies credulity. Konkel Decl., ¶ 3, Ex. A. at 272-79. Strenk testified that at the time he had asked Kalibrate to determine the "impact of Costco on the entire market," he "wasn't aware of data that was available that had all of the Costco volumes and prices on each of the days," even though the data had been "requested." *Id*. at 196-97, 274. Strenk repeated this assertion in response to additional questions posed by Plaintiffs' counsel:

> **Q**:  And did you discover the fact that you had the Costco data after you were
>        informed that the reliance on Kalibrate would not be allowed [based on the
>        Court's December 20, 2021 order]?
>
> **A**:  Yes.
>
> **Q**:  And that was, though, in the information that had been provided in discovery, you
>        simply overlooked it; is that fair?

14

**A**:     Yeah.  I didn't think there was Costco data in there.  I was reading the title of the thing, and I thought it was all the dealer data and, of course, Costco was buried in between the dealer, so I didn't know I had Costco data.

*Id*. at 274. *See also* 12/5/2021 Strenk Decl., Docket 56.

After hearing this testimony, Costco's counsel asked Strenk to confirm unequivocally that the data he had referenced – and that he supposedly had not known was available to the parties until after this Court's December 20, 2021 ruling – was Costco's daily pricing and sales volume. Konkel, Decl., ¶ 3, Ex. A at 277:5 – 278:7. Strenk testified that even as of the date of his January 20, 2022 deposition, he still was not sure whether or not he had the Costco sales price and volume data prior to preparing his October 11, 2021 rebuttal report.  *Id*. at 279.

The problem with this testimony, however, is that Strenk had conducted a detailed analysis of Dr. Sorensen's August 23, 2021 expert report and cross-price elasticity regression analysis in that report, as reflected in Strenk's October 11, 2021 "rebuttal" of Dr. Sorensen's analysis.  *See* Docket 54-4.  Dr. Sorensen's report *attached* the entirety of Costco's sales and pricing data in an appendix, and Dr. Sorensen's narrative report referenced and relied upon that Costco data.  *See* Sorensen Report, Docket 69-32, App. A.  Strenk testified, as one would expect, that he had "thoroughly" reviewed Dr. Sorensen's report before drafting his rebuttal.  Konkel, Decl., Ex. A at 250:20-21.  Further, Strenk personally transmitted the spreadsheet containing all of the available Costco pricing and sales volume data to Kalibrate on June 24, 2021, *specifically commenting* on Costco's pre-COVID sales volume.  *See* Docket 54-6 at STRENK000541.

Strenk's testimony that he did not even know he had Costco's sales and pricing data before preparing his rebuttal report is not credible, and affords no justification for relieving Plaintiffs of the consequences of their strategic decision to forego any such data analysis until *after* those consequences became apparent to them during the depositions conducted by Costco

15

over the past few months.  Plaintiffs' decision to wait until February 11, 2022 to file the instant

motion – after all of these depositions had been conducted – speaks volumes.

**B. Plaintiffs' proposed "do over" of their expert witness reports would cause substantial prejudice because Costco has taken 10 depositions based on the content of those expert reports and because Costco has made important decisions about the discovery to pursue based on Plaintiffs' experts' disclosures.**

As demonstrated in the preceding section of this brief, Plaintiffs cannot establish the

"diligence" required by the first prong of the three-factor test under Rule 16(b), nor do Plaintiffs

contend that the second prong of Rule 16(b) justifies their late-breaking proposal to expand

Strenk's opinions.  Because Plaintiffs had all of the underlying data long before Strenk submitted

his rebuttal report, there is no basis to contend that supplementation is necessitated by the receipt

of new data.  *See* Konkel, Decl., ¶ 3, Ex. A at 196-97, 274.  While Plaintiffs thus have failed to

satisfy the first two prongs of Rule 16(b), the prejudice that would be caused to Costco if

Plaintiffs' were relieved of the consequences of their strategic choices also requires that their

motion be denied.

**1. Rule 26(e) does not permit parties to evade the consequences of adverse court rulings or foiled strategic choices concerning the scope and contours of expert testimony, under the guise of supplementation**.

Plaintiffs' sole excuse for failing to timely prepare and disclose a price elasticity data

analysis as a part of Strenk's October 11, 2021 rebuttal report is their assertion they had been

counting on the Kalibrate analysis, putting all of their eggs in that basket.  However, once a party

has made a strategic decision to employ one avenue of expert testimony to the exclusion of other

avenues that were available to the party from the outset, supplementation may not be used in

furtherance of "an attempt to work around [a] previous ruling by [the] court." *Noffsinger v.*

*Valspar Corp.,* No. 09 C 916, 2011 WL 2457944, at *1 (N.D. Ill. June 17, 2011).  To the

contrary, as the Seventh Circuit held in *Winters v. Fru-Con Inc.*, "[t]he litigation process does

not include 'a dress rehearsal or practice run' for the parties." 498 F.3d 734, 743 (7th Cir. 2007). Where a party's "inability to produce admissible expert testimony is due to his own actions, namely the failure of his proposed experts to test their alternatives," the "district court [is] not required to give [that party] a 'do over,'" under the guise of the "supplementation" of the expert's report. *Id*.

Consistent with the Seventh Circuit's admonition, multiple district courts have held that parties are not entitled to a second bite at the apple or a "do over" on their strategic choices about the scope and contours of their expert disclosures, opinions, and analyses, under the guise of Rule 26 "supplementation." *See Marine Travelift, Inc. v. Marine Lift Sys., Inc.,* No. 10-C-1046, 2013 WL 6255689, at *15 (E.D. Wis. Dec. 4, 2013) (the "purpose of supplemental expert disclosure is to correct inaccuracies or to supplement the record with information that was not previously available"); *Est. of Cape v. United States*, No. 11-C-0357, 2013 WL 4522933, at *5 (E.D. Wis. Aug. 27, 2013) (because "supplementation is not properly used to remedy defects in an expert's report or testimony after the weaknesses have been revealed," attempts to "introduce a new methodology after the deadline for expert disclosures may be rejected by the district court," and a "supplemental expert report that is used to strengthen the opinion of the original report is beyond the bounds of permissible supplementation"); *In re Ready-Mixed Concrete Antitrust Litig.*, 261 F.R.D. 154, 159 (S.D. Ind. 2009) (Rule 26(e) supplementation "does not give license to sandbag one's opponent with claims and issues which should have been included in the expert witness' report" nor "a license to disregard discovery deadlines and to offer new opinions under the guise of the 'supplement' label"). *See also Council 31, Am. Fed'n of State, Cty. & Mun. Emps., AFL-CIO v. Doherty*, 169 F.3d 1068, 1075 (7th Cir. 1999) (affirming district court's decision to exclude an expert report that "contained no newly acquired information").

As the court held in *In re Ready-Mixed Concrete*, *supra*, because the plaintiffs' proposed "supplementation" of their expert's report consisted of "new analyses" that had not been "developed in the original report," and were "directed at the most significant issues in the case," the untimely expansion of the scope of the expert's original disclosures was not permitted. 261 F.R.D. at 159. Any other rule, the court concluded, would "create a system where preliminary reports could be followed by supplementary reports and there would be no finality to expert reports ...." *Id.* at 160.

> **2. Because Costco made numerous strategic decisions concerning the conduct of the Plaintiffs' depositions and the formal and informal third-party discovery that was necessary – and was _not_ necessary – based on the Plaintiffs' expert disclosures, the proposed expansion of Strenk's opinions on the eve of the close of discovery and in the midst of briefing on certification and summary judgment would cause enormous prejudice**.

Where, as here, the proposed "do-over" of Strenk's analysis and expert reports would cause enormous prejudice to Costco, Plaintiffs are not entitled to the relief they are requesting. *See Welch,* 2009 WL 700199, at *4 (the "fact that entirely new analyses were conducted demonstrates the report cannot be characterized as simply a supplemental or a rebuttal report"); and *Doe 1 v. City of Chi.*, No. 18-CV-3054, 2019 WL 5290899, at *3-5 (N.D. Ill. Oct. 18, 2019) ("any calculations performed by [the expert] should have been included with his [original] expert reports"). Contrary to Plaintiffs' contention that Costco would suffer no prejudice if Plaintiffs were permitted to "supplement" their expert disclosures with Strenk's newly conducted price elasticity analysis, Costco would suffer enormous prejudice if this were permitted to occur.

Costco has conducted the depositions of all of the corporate representatives of the Plaintiffs based on the regression analysis performed by Dr. Sorensen and based on the actual contents and opinions disclosed in the Plaintiffs' experts' reports. Costco conducted the depositions of all of the corporate representatives of the twelve Plaintiff gas station operators

18

between December 6, 2021 and January 13, 2022, and Costco's counsel based their questioning on the specific contents, contours, and limitations of Plaintiffs' disclosed expert opinions.

As explained in detail in Costco's brief in opposition to class certification filed earlier this week, if there had been a cross-price elasticity analysis purporting to demonstrate a correlation between Costco's challenged pricing and one or more of the Plaintiffs' sales, these depositions would have been conducted quite differently, and additional information would have been pursued through other discovery vehicles. *See* Certification Opposition, §§ I-IV, Docket 65.

For example, Costco's counsel asked each of the Plaintiffs' corporate representatives whether they had conducted any analysis of the claimed impact of Costco's challenged pricing on their own sales experience. If Costco had identified a Plaintiff who had actually conducted such an analysis (as Strenk now claims to have done on their behalf), Costco's counsel would have explored the basis for any such testimony by specific reference to that Plaintiff's business records produced in this action, reflecting their own pricing and sales volume. If a Plaintiff had testified his or her station had been negatively impacted by the pricing, Costco's counsel would have explored the myriad, alternative explanations for any such claimed declines in sales on the days in question and would have confronted the witnesses with information secured through DATCP open records requests and other sources to test the validity of any such claimed, causal relationship. *Id.*, § I (detailed discussion of multiple, alternative factors driving any potential declines in Plaintiffs' gasoline sales).

Costco's counsel would have cross-examined each Plaintiff about the existence of similar or identical gas prices offered by other stations in the area on the days that they claimed to have lost sales due to Costco's prices, to ascertain how they could possibly attribute a lost sale to Costco, rather than to these other competing stations. Costco would have tested their knowledge

or ignorance of the basis for those other competing stations' similar or identical prices; whether they had reviewed and assembled the Notices of Meeting Competition filed by those other competing stations; and if they had not done so, their basis for claiming that any or all such stations had premised their reduced price on Costco's price, as opposed to other direct competitors. *See RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 215 (N.D. Ill. 2013) (exclusion was appropriate where counsel "might well have conducted its depositions differently" if timely disclosure had been provided).

Because the only admissible and disclosed expert opinion testimony in this case demonstrates that Costco's challenged pricing did not cause any of the Plaintiffs to lose sales nor pose a threat of such lost sales, and because none of the Plaintiffs themselves had conducted any such analysis, Costco did not pursue those avenues of questioning. Further, and equally important, if the Plaintiffs had timely disclosed Strenk's price elasticity data analysis purporting to contradict Dr. Sorensen's analysis, Costco would have pursued substantial third-party discovery directed to other competing gas stations in the area. Further, Costco's counsel would have carefully studied any such competing data analysis with its own experts and Costco's business personnel, to help prepare for the deposition questioning of the Plaintiffs, and to make important strategic decisions about third party depositions and document discovery. Further, Costco's counsel would have conducted the deposition of Strenk himself quite differently if he had disclosed a purported price elasticity data analysis in his expert report. *See Welch,* 2009 WL 700199, at *5 (treating the expert's proposed "new report as merely a supplemental report would, as Defendant points out, cause further delay, because Defendant would certainly have the right to conduct discovery on these new analyses," and such a "practice would circumvent the full disclosure requirement implicit in Rule 26 and would interfere with the Court's ability to set case

management deadlines, because new reports and opinions would warrant further consultation with one's own expert and virtually require new rounds of depositions").

Costco was robbed of these opportunities because Plaintiffs did not disclose any such price elasticity data analysis as a part of their expert reports and disclosures, and because Strenk did not unveil his newly-conducted analysis until February 17, 2022 – after *all* of the depositions of the Plaintiffs already had been completed, and after it was too late to conduct the type of third party formal and informal discovery that would have been prompted by timely disclosure of any such opinions. This is precisely the type of prejudice that precludes the relief being requested here. *See Allgood*, 2007 WL 647496, at *3 (finding prejudice where the defendant would have to conduct additional depositions and pursue other avenues of rebuttal evidence in response to the late-breaking expert testimony proposed by the plaintiff).

Worse, Plaintiffs' motion to expand their expert opinions was filed in the midst of the briefing on class certification, and Strenk's proposed price elasticity analysis addresses an issue that received prominent attention in Costco's certification and summary judgment briefing. *See* Docket 65 at 13-20; Docket 67 at 10-11, 30. Costco waited until after the Plaintiffs had filed their motion for class certification before conducting the depositions of the Plaintiffs and their experts so that (1) Costco's counsel would have the benefit of the Plaintiffs' stated grounds for certification before conducting the depositions (including the testimony from Plaintiffs' experts); and so that (2) the Plaintiffs and their counsel would not be forearmed with any lessons learned from cross-examination of the Plaintiffs and their experts prior to putting forward their theory in favor of class certification. Plaintiffs' filing of this motion on the heels of those depositions – rather than immediately after this Courts' December 20, 2021 ruling – underscores the significance of Costco's strategic decision. *See* Docket 59 and 62. Since the lynchpin of

Plaintiffs' November 18, 2021 certification motion is their persistent claim that they need not submit any evidentiary facts demonstrating that Costco's challenged pricing "injured or threatened [them] with injury," Plaintiffs' February 11, 2022 motion to expand Strenk's expert opinions is obviously a direct response to the lessons learned during the depositions over the past two months. Plaintiffs' motion seeks to wreak havoc to this case and Costco's response to the strategic choices Plaintiffs have made in this case.

Plaintiffs' assertion that prejudice can be avoided simply by providing the company with additional time to depose Strenk about his untimely disclosures overlooks the irremediable prejudice resulting from the fact that Costco has already deposed all of the Plaintiffs and their experts on the basis of Strenk's disclosed opinions. Separate and apart from the enormous expense and burden of having to conduct new depositions of each of the Plaintiffs, preceded by additional third-party discovery in preparation for those depositions, Costco was entitled to refrain from posing *any* questions to the Plaintiffs and their experts until Costco's counsel was fully prepared to do so.

Further, Costco prepared and filed a substantial summary judgment motion based on the state of the factual record and the state of expert opinion disclosure as it existed prior to Strenk's eleventh-hour "supplementation" of his opinions. *See* Docket 67. Although Costco's summary judgment motion rests upon a demonstration that there has been no violation of the Unfair Sales Act as a matter of law, the motion is also based in significant part on the complete absence of any admissible evidence that the Plaintiffs have been "injured or threatened with injury," which in turn is based in part on Dr. Sorensen's unrefuted cross-price elasticity analysis. *Id*., § II.

Finally, Plaintiffs' argument that there is no prejudice because no trial date has been set in this action ignores the prejudice that would already have been wrought by Plaintiffs' untimely

and improper effort to put forward entirely new expert analyses in support of their claims. Further, multiple courts have rejected the argument that the mere absence of a trial date provides a basis for thwarting the deadlines imposed by the Court and forcing opponents to incur additional expenses and participate in additional months of discovery and trial preparation. *See Doe 1 v. City of Chi.*, No. 18-CV-3054, 2019 WL 5290899, at *4 (N.D. Ill. Oct. 18, 2019) (even where no trial date has been set late disclosure of expert opinions is not "harmless," as "'[m]issing expert disclosure deadlines tends to work particular havoc on case management'") (quoting *Trinity Homes, LLC v. Ohio Cas. Ins. Co. Grp.*, No. 1:04-cv-01920-SEB, 2011 WL 2261297, at *5 (S.D. Ind. June 8, 2011)). As the *Doe 1* court held:

> The district court rejected the defendants' argument, holding that "*the fact that no trial date yet has been set is not an adequate justification for failure to comply with discovery obligations.*" […] The *Taylor* court further noted that the defendants' failure caused the plaintiff and the court to "*expend unnecessary time and resources on a matter that should have been produced earlier....*" […] So too here, *Defendant's failure to timely produce Dr. Cohen's spreadsheet will result in the expenditure of unnecessary time and resources for something that should have been produced with Dr. Cohen's original report* in August, *regardless of whether a trial date had been set*.

*Id.* (quoted source omitted) (emphasis supplied).

Plaintiffs made deliberate, strategic choices in this action, and Costco has made its own important decisions in response to Plaintiffs' strategy. Costco's reliance on the decisions the Plaintiffs have made in this action would be upended if they were permitted to submit entirely new expert opinions and data analysis at this late stage. Plaintiffs should not be relieved of the consequences of their strategic choices to the detriment and prejudice of Costco, and through no fault of Costco's. Plaintiffs' motion to supplement the Strenk report should be denied.

**II.** **Plaintiffs' Proposed, Eleventh-Hour Fishing Expedition into Costco's Customers and Business Operations in Appleton and throughout the Entire State of Wisconsin is Wholly Improper Because these Burdensome Discovery Requests have No Conceivable Bearing on the Issues Presented in this Action.**

Although they have had nearly two years to conduct discovery since the May 13, 2020 removal of this action to federal court, Plaintiffs have unleashed a flurry of new requests for admissions, interrogatories, and requests for production served on the heels of Costco's depositions of the Plaintiffs and their experts. As will be demonstrated, Plaintiffs have realized over the past two months of depositions that their theories of liability, injury, and causation are plainly deficient, and they are now in search of new theories to support their claims on the eve of the close of discovery.

Relying on discovery standards enunciated in 1970, 1975, and 1981, Plaintiffs ignore the proportionality limitations on discovery enunciated after those decisions. *Compare* Pls.' Br. at 7-8, Docket 62, *with Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 479 (discovery must be proportional and "efficiencies are lost when claims or defenses are left out of pleadings and a party then attempts to assert them at later stages"); and *Metcalf v. Ross*, No. 19 C 4623, 2021 WL 1577799, at *2 (N.D. Ill. Apr. 22, 2021) (providing in depth discussion of the roots and importance of the proportionality standards). Because Plaintiffs already have been provided with some of the discovery they have demanded, and because the balance of the requests does not have even an attenuated bearing on the parties' claims and defenses, is wholly disproportionate to the needs of this case, and imposes a burden upon Costco plainly outweighing its likely benefits, the Plaintiffs' motion should be denied.

First, Plaintiffs demand a response to Interrogatory Number 3, seeking disclosure of the days between October 1, 2019 and December 31, 2020 when Costco sold its gas for "less than what it paid for that gallon." Pls.' Br. at 8, Docket 62. Plaintiffs claim that any sales below the price paid for gas make Costco an unlawful "loss leader" under section 100.30(3), and that evidence of such sales constitutes "bad faith." *Id*. at 6, 8-9. However, during the early months

24

of discovery in this action, Costco already produced its minimum markup calculation, which includes each of the statutory components for the "cost" calculation under the Act – including Costco's invoice cost. *See* Konkel Decl., ¶ 4, Ex. B. There is nothing more to produce. *Id*.

More importantly, even if Costco had sold its gas for less than the cost of the fuel on a particular day based on its right to match the "existing price of a competitor," such conduct is expressly permitted by section 100.30(6)(a)7, as discussed in detail in Costco's opposition to certification and its summary judgment brief. *See* Docket 65 at. 6-10; Docket 67 at 14-16. Because it is absurd to argue that conduct expressly permitted by section 100.30(6)(a)7 reflects a "bad faith" violation of the Act, there is no basis for this discovery in the first place. *See, e.g.*, *State v. Ross*, 259 Wis. 379, 386, 48 N.W.2d 460 (1951) (holding that the express statutory exemptions "justify sales below cost and negative the prima facie showing of unlawful intent," including the exceptions permitting a retailer "to make sales below cost in an endeavor in good faith to meet the legal prices of their competitors").

Second, Plaintiffs have demanded Costco identify the number of its out-of-state customers who purchased fuel at the Bellevue Costco in 2019 or 2020, and to provide identifying data for all Costco customers throughout the entire State of Wisconsin who purchased gas at the Bellevue Costco from October 1, 2019 through December 31, 2020, as well as all the dates and times of those purchases. Pls.' Br at 9-10, Docket 62. Plaintiffs' premise for this inordinately burdensome request is their curious proposition that if Costco has a "plethora" of customers throughout the state and even the country who may have purchased gas at the Bellevue Costco at any time during this two-year period, Costco's failure to price match against stations in Milwaukee, Chicago, or Denver somehow undercuts its "good faith" in price matching against the BP station in Kaukauna. *Id*. Plaintiffs' argument for this discovery is a *non sequitur*.

Costco matches the prices of the Kaukauna BP because the Bellevue Costco literally has *hundreds* of customers who live in Kaukauna and in the immediate vicinity of the Kaukauna BP who have purchased gas (and other products) from the Bellevue Costco on multiple occasions during the time period specified. *See* Costco Summary Judgment Brief at 4-8, Docket 67; Konkel Decl., ¶ 5, Ex. C (business record reflecting thousands of transactions at the Bellevue Costco by residents of Kaukauna).

Plaintiffs' argument that the Bellevue Costco's decision <u>not</u> to price match against a gas station in Milwaukee, Chicago or Denver somehow casts doubt on the legitimacy of the Bellevue Costco's decision to match the price of a Kaukauna BP station that is surrounded by hundreds of its customers who have made thousands of trips to the Bellevue Costco during the October 1, 2019 through December 31, 2020 time frame, is absurd. There is no basis for compelling Costco to respond to these onerous, intrusive, and wholly immaterial customer data requests.

Third, even if any of this data were relevant, it would be extraordinarily burdensome to produce. As noted in Costco's objections, McKinley Decl., ¶ 12, Ex. E, Docket 64, providing years of gas purchasing and customer data would take weeks of effort and dozens of hours of time for Costco personnel. Declaration of Helen Carothers, ¶¶ 4-7. Moreover, it is a duplication of Costco's previous substantial efforts to provide Plaintiffs with Costco's gas purchasing transactions. *Id*. at ¶¶ 3-4

Fourth, similarly burdensome is the request that Costco produce "all internal documents, memos, and communications or other materials" about Costco's "business model" over the last five years. McKinley Decl., Ex. E, Docket 64. This request seeks nothing less than every piece of paper related to its business throughout the entire world and for every single product it sells for five years for a case that is about one product at one warehouse over 15 months. The request – as

written and which Plaintiffs refuse to narrow – is impossible to fulfill as there is no practical way to gather every document, communication, and "other materials" for all of Costco's "marketing, sales, and business development strategies" for five years that is unrestricted as to product or warehouse location. *Id*. Plaintiffs' motion improperly ignores the burden and duplication in their motion, failing to satisfy a foundational issue in seeking a motion to compel.

Fifth, Plaintiffs seek to compel the production of Notices of Meeting Competition that the *Appleton* Costco filed during the alleged violation dates during the period of October 1, 2019 through December 31, 2020, along with the identifying data for the Appleton Costco customers and their gasoline purchase transactions throughout that time frame. *See* Pls.' Br. at 10-11 (Interrogatory 8 and RFP 1). Although this lawsuit challenges the pricing of the *Bellevue* Costco, Plaintiffs contend this discovery is necessary to prove Costco's "bad faith" in price matching against the Kaukauna BP. Since the Kaukauna BP is closer to the Appleton Costco than the Bellevue Costco, Plaintiffs ask, then why doesn't the Appleton Costco price match against the Kaukauna BP as well? And doesn't the Appleton Costco's failure to do so prove that the Bellevue Costco's price matching must be suspect and conducted in bad faith? *Id*. at 10.

Plaintiffs' queries forget the simple fact that the Appleton Costco has *dozens* of direct competitors whose prices they could match *other than* the Kaukauna BP station. *See* Docket 69-34 (listing gas stations in northeast Wisconsin, including 90 gas stations in Outagamie County alone). Section 100.30(6)(a)7 *permits* a retailer to price match against a direct competitor; it does not *require* a retailer to do so, much less requiring a retailer to price match against *all* of the dozens (or sometimes hundreds) of gas stations that are among its direct competitors. Because each direct competitor that is added to a warehouse's daily price surveying efforts requires additional time, money, and personnel resources to survey its prices, it would be absurd for *any*

retailer to canvass the prices of *all* of its direct competitors on a daily basis. *See* Declaration of Joe Ballard, ¶ 5.

Thus, although the Appleton Costco *could* have price matched against the Kaukauna BP, the Appleton Costco *instead* price matches against five gas stations within a stone's throw of the Kaukauna BP, including three stations that are just 2.5 miles west of the Kaukauna BP. *Id*. ¶¶ 4-6. This map depicts the location of the Kaukauna BP and the stations the Appleton Costco includes in its daily price surveys, located just 2.5 miles from the Kaukauna BP:



Nor is it surprising the Appleton Costco has not identified the Kaukauna BP as a competitor, as the direct competitors matched by the Appleton Costco sold their gas for the same (or even lower) price as the price offered by the Kaukauna BP on each day that the Bellevue Costco price matched against the Kaukauna BP. *Id*. ¶ 7. Plaintiffs' proffered basis for demanding detailed information concerning the Appleton Costco's customers and transactions finds no support in the law (because section 100.30(6)(a)7 does not *require* a retailer price match against any, much less every, direct competitor) and finds no support in the facts or logic (because there is a simple explanation for the Bellevue Costco's price matching against the Kaukauna BP even though the

Appleton Costco has not done so).  Further, Plaintiffs' arguments to compel this discovery overlooks that if the Bellevue Costco has a right under section 100.30(6)(a)7 to match the prices of the Kaukauna BP, then its entirely lawful behavior does not suddenly become unlawful just because another Costco warehouse follows a different course.  *See* Wis. Stat. § 100.30(6) (providing that the prohibitions and penalties of the Unfair Sales Act do not apply to sales made in conformity with the enumerated exceptions or safe harbors).

### III.     Because the Plaintiffs are not Entitled to the Relief They have Requested in Their Motions, There is no Reason to Modify the Deadlines in the Scheduling Order.

Costco already has spent hundreds of thousands of dollars defending a lawsuit that should never have been filed against the company, consuming enormous personnel resources as well. As Costco has demonstrated in its summary judgment motion, Plaintiffs' claims are premised upon a rewriting of the Act to impose obligations and prohibitions nowhere to be found in the language of the statute.  While such a tortured interpretation of a statute is never permissible, Plaintiffs' bid to judicially expand the prohibitions of the Act is particularly offensive to the rule of strict construction applicable to this penal statute.  *See Liberty Loan Corp. & Affiliates v. Eis*, 69 Wis. 2d 642, 649, 230 N.W.2d 617 (1975); *PDQ Food Stores, Inc. v. Speedway SuperAmerica, LLC,* No. 99-CV-2756, 2000 WL 33418835, *5 (Wis. Cir. Ct. June 8, 2000).

Accordingly, Costco opposes Plaintiffs' proposal for a "reboot" of the scheduling order to afford them additional time to develop expert testimony they deliberately eschewed at the outset of this case, and to pursue additional discovery that has no potential bearing on the claims and defenses in this action.  There is no justification for further extending the deadlines in this action and doing so would needlessly add additional time – and therefore expense – before the final adjudication of the claims in this action.

Further, while Costco is an enthusiastic proponent of mediation, there are unique challenges to the consensual resolution of this case, and no basis for deferring a ruling on the certification and summary judgment motions that are pending before the Court. Since Costco already has spent hundreds of thousands of dollars defending this action, a settlement at this juncture, reached before an adjudication of Costco's summary judgment motion, could expose the company to serial, copycat lawsuits against Costco asserting the same spurious allegations of unlawful conduct.

While Costco certainly understands the vagaries and unpredictability of litigation, Costco also is confident that it has not engaged in any unlawful conduct and believes strongly in the merits of its pending motion for summary judgment. Costco's interpretation of the Unfair Sales Act is consistent with the statute's plain language and is supported by interpretative guidance promulgated by the persons holding the highest positions of responsibility at DATCP. *See* Costco Summary Judgment Brief at 6-8, Docket. 66. While Costco is confident its interpretation of the statute should prevail under any standards of interpretation, the fact that Plaintiffs are pressing unprecedented interpretations of a penal statute that must be strictly construed to *limit* – rather than *expand* – the scope of its proscriptions provides additional support for its view.

Accordingly, while Costco does not oppose the entry of an order confirming a specific date or deadline for mediation, Costco opposes the general deferral of pending deadlines, stay of briefing, and expansion of discovery beyond the current April 1, 2022 deadline.

## Conclusion

For each of the foregoing reasons, Plaintiffs' motions should be denied.

Dated this 4th day of March, 2022.

By: s/Paul F. Heaton_____
Paul F. Heaton
State Bar No. 1000858
David R. Konkel
State Bar No. 1097244
Emma J. Jewell
State Bar No. 1104663
Godfrey & Kahn, S.C.
833 East Michigan Street, Suite 1800
Milwaukee, WI 53202-5615
Phone: 414-273-3500
Fax: 414-273-5198
Email: pheaton@gklaw.com
dkonkel@gklaw.com
ejewell@gklaw.com

Attorneys for Defendant COSTCO
WHOLESALE CORPORATION

26834357.2